(No. 24048.—

KATHERINE B. COMSTOCK *et al.* Appellees, *vs.* THE MORGAN PARK TRUST AND SAVINGS BANK *et al.*—(ADELINE BENJAMIN *et al.* Appellants.)

*Opinion filed October 15, 1937—Rehearing denied Dec. 8, 1937.*

ENOCH J. PRICE, and OWEN N. PRICE, for appellants.

FRIEDMAN, SCHIMBERG & ALSTER, and AARON SOBLE, (MAX M. GROSSMAN, and MAX CHILL, of counsel,) for appellees.

CHARLES LEROY BROWN, THEODORE S. CHAPMAN, THOMAS L. MARSHALL, JOHN J. SHARON, FRANCIS E. MATTHEWS, and KENNETH L. KARR, *amici curiæ*.

CLYDE L. DAY, MERRITT J. LITTLE, KARL EDWIN SEYFARTH, GEORGE EDWARD LEONARD, BENTON ATWOOD, JULIAN E. LATHAM, and GORDON McLEISH LEONARD, other *amici curiæ*.

Mr. CHIEF JUSTICE FARTHING delivered the opinion of the court:

When this cause first came before us, we transferred it to the Appellate Court for the First District. (*Comstock v. Morgan Park Trust and Savings Bank*, 363 Ill. 341.) That court affirmed the decree of the circuit court of Cook county, (287 Ill. App. 613,) and we have granted leave to appeal.

On Sunday, January 24, 1932, the above bank's board of directors met at the president's home in Chicago and adopted a resolution which stated that, on account of withdrawals, the secondary reserves of the bank had been exhausted to such an extent that the directors were convinced that the bank could not meet additional withdrawals. The Auditor of Public Accounts was requested to take charge of the bank for the purposes of examination and such other action as he deemed proper. Accordingly, he took charge next day and the bank was not reopened. The auditor appointed his receiver and is liquidating the bank. The appellee Lipshitz filed the original bill on behalf of himself and the other creditors shortly after the bank's opening hour on the day the auditor took charge. On a printed form, he alleged that he had on deposit in the bank $167. The proof showed later that his balance was less than $6. The bill alleged that on that day the auditor had made an examination to determine the bank's financial condition and had closed the bank, etc.; that its assets were car-

ried at more than $1,000,000; that its liabilities exceeded $1,500,000 and that it was hopelessly insolvent. The bill prayed that the stockholders be held liable under section 6 of article 11 of the Illinois constitution; that a receiver be appointed to receive and disburse moneys collected from the stockholders, and that all other creditors be enjoined from filing suits against the stockholders. The auditor appointed his receiver to liquidate the bank February 25, 1932, and on March 4, 1932, he filed his bill in the circuit court of Cook county in liquidation proceedings. Later an amended and supplemental bill was filed in the case before us and, on October 18, 1934, while testimony was being taken, appellants filed their cross-bill, setting up the payment, by the auditor's receiver, of a twenty-five per cent dividend to the general creditors of the bank. They sought to have this dividend deducted from the amounts due creditors which affected their liability as stockholders and asked that the appellees be restrained from prosecuting their suit until the bank had been fully liquidated. The court struck the cross-bill for want of equity.

When the supplemental bill was filed, a separate suit in the superior court of Cook county was dismissed and the complainants therein were joined as complainants in the amended and supplemental bill. The supplemental bill was based on section 11 of the Banking act, as was the case in *Elkin* v. *Diversey Trust and Savings Bank,* 363 Ill. 160. The minority of certain complainants was divulged during the hearings before the master. Complainants amended their bill again, making these parties complainants by next friends. However, no cost bond was filed, and appellants insist that this was required by statute. (64 S. H. A. 18; State Bar Stat. 1935, chap. 64, par. 18.) We have held that it is discretionary to allow a minor to sue, by a suit to be prosecuted by his next friend, without security for costs, (*Chicago and Iowa Railroad Co.* v. *Lane,* 130 Ill. 116,) and that the cost bond is not a jurisdictional re-

quirement. *Consolidated Coal Co.* v. *Gruber,* 188 Ill. 584; *Baltimore and Ohio Southwestern Railway Co.* v. *Keck,* 185 id. 400.

In addition to the failure to disclose the minority of certain appellees, the over-statement of the amount of Lipshitz's bank account, and the early filing of the original bill, appellants point out matters in connection with the allowance of solicitors' fees, all in support of the claim that appellees were not *bona fide* suitors and did not come into equity with clean hands. Concerning the requirement of "clean hands" Pomeroy says: "The maxim, considered as a general rule controlling the administration of equitable relief in particular controversies, is confined to misconduct in regard to, or at all events connected with, the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the two parties, and arising out of the transaction: it does not extend to any misconduct, however gross, which is unconnected with the matter in litigation, and with which the opposite party has no concern. When a court of equity is appealed to for relief it will not go outside of the subject-matter of the controversy and make its interference to depend upon the character and conduct of the moving party in no way affecting the equitable right which he asserts against the defendant, or the relief which he demands." (1 Pomeroy's Eq. Jur. (3rd ed.) p. 659.) Here the acts of misconduct charged against appellees and their solicitors have no bearing on or connection with the right of complainants to file their suit. The contention that they did not come into court with clean hands must, therefore, be overruled. *City of Chicago* v. *Union Stock Yards Co.* 164 Ill. 224.

In the final analysis, appellants argue that they are liable only as sureties, for they insist not only that insolvency is a necessary and material allegation, but that they are entitled to a continuance of the case against them until liquidation is complete. We have not held, as appellants

contend, in either *Heine* v. *Degen,* 362 Ill. 357, or *Zimmerman* v. *Zeimer,* 363 id. 220, that insolvency must be alleged and proved to entitle creditors to maintain representative suits against stockholders in State banks. On the contrary, in the former case we held that stockholders could not delay a reference to a master until the creditors' claims had been proved. The consistent holding has been that State bank stockholders are subject to a primary, individual liability. It has been likened to that of partners, and we have never held that the assets of the bank must be exhausted before the stockholders' liabilities can be decreed. It is not necessary to determine whether the proof shows that the bank was insolvent, because the allegation of insolvency in the original bill was surplusage.

Appellants contend that no sufficient foundation was laid before appellees' audit of the books of the bank was admitted in evidence. They rely on *LeRoy State Bank* v. *Keenan's Bank,* 337 Ill. 173, but in that case the plaintiff was a bank and it attempted to prove its claim against stockholders of the defendant bank by an audit of plaintiff's own books. In the case before us, the bank's books were admissible against its stockholders as admissions against interest. (*Loewenthal* v. *McCormick,* 101 Ill. 143; *Dows* v. *Naper,* 91 id. 44.) The fact is not questioned that these were the books of the bank. Nor is it questioned that they were voluminous. It was not error to admit the audit in evidence.

Appellants correctly contend that they should have been permitted to show a reduction in the bank's liabilities by payment of a twenty-five per cent dividend to the general creditors before the decree was rendered. This fact was admissible under their answer and no cross-bill was necessary. The constitutional provision deals only with liabilities, that is, unpaid debts. (*Burket* v. *Reliance Bank and Trust Co.* 366 Ill. 98.) The appellees reply that this is a harmless error for two reasons, the first of which is, that

the right of a debtor to direct the application of a payment does not exist where money is paid *in invitum,* and that this dividend was applied to moneys due on adjudicated claims. (*Richmond* v. *Irons,* 121 U. S. 27; *In re Estate of Cunningham,* 311 Ill. 311; *Scales* v. *McMahon,* 364 id. 413.) According to their computation, approximately three-fifths of the dividend went for accumulated interest. Where the assets of a corporation, including money paid as a liability of a stockholder, are less than the company's indebtedness, and the assets come into a court of equity for administration and liquidation, interest is not allowed on claims against the fund. Only where the claims have been paid in full and there is a surplus, is interest allowed in such a case. *Gillett* v. *Chicago Title and Trust Co.* 230 Ill. 373, 415; *Thomas* v. *Western Car Co.* 149 U. S. 94.

Appellees' second contention is, that even if the dividend had been deducted the outstanding liabilities remaining were greater than the par value of the stock held by all of the appellants except Enoch J. Price. He held seventy-nine shares of stock when the bank closed. Earlier he had held thirty additional shares, on which he was liable for $374.64. He was ordered to pay a total of $8023.92. The dividend that should have been deducted from the liabilities which accrued during the various periods in which he was a stockholder would not have reduced his liability on the seventy-nine shares below their par value, totaling $7900. The error in his favor as to the remaining liability on thirty shares is not made the subject of a cross-appeal, but Price is not entitled to a reversal. If the court's ruling as to the dividend had been correct, and the computation of the amount due from Price by reason of his ownership of one hundred and nine shares of stock had also been correct, he should have been ordered to pay more than $8023.92. This renders the improper ruling as to the dividend harmless error as to all appellants.

By the statute, (53 S. H. A. 38; State Bar Stat. 1935, chap. 53, par. 34;) the master was entitled to fifteen cents per folio for all the evidence introduced at the hearings. (*Donham* v. *Joyce,* 257 Ill. 112.) In *Herpich* v. *Williams,* 300 Ill. 540, we held that the chancellor, in fixing master's fees for services not required by law to be itemized, should base the amount on the actual number of days that were reasonably required in their performance. That number of days should not be so excessive as to render nugatory the restrictions as to the *per diem* there prescribed. The amount to be allowed as a *per diem* should be based on evidence heard "before the chancellor on principles not inconsistent with natural justice." The master was allowed $775, half of the $1550 requested by him in his third certificate. The item is: "Fees to be fixed by the court for obtaining files, docketing cause, attending hearings, preparing report, hearing objections, etc., $1550." No evidence was heard as to the reasonable value of such of these items as the master was entitled to be paid for. In the absence of such proof we cannot tell whether $775 was a proper allowance.

The judgment of the Appellate Court for the First District is affirmed, except as to the item of $775 allowed to the master in chancery, for preparing his report, etc. As to that allowance the judgment is reversed. The cause is remanded to the circuit court of Cook county with directions to hear whatever testimony may be presented by the master in chancery, after reasonable notice to him, as to the nature, extent and reasonable compensation to be paid him for the work done in preparing his report. The appellants will pay seventy-five per cent of the costs in this court and the appellees the remaining twenty-five per cent thereof.

*Affirmed in part, reversed in part*
*and remanded, with directions.*