(No. 25503—

CARL S. HOOD *et al.* Appellees, *vs.* THE COMMONWEALTH TRUST AND SAVINGS BANK *et al.*—(A. G. WILLIAMS *et al.* Appellants.)

*Opinion filed April 15, 1941—Rehearing denied June 4, 1941.*

414

Shaw, J., dissenting.

Lucius, Buehler & Lucius, George Gillette, John Mann, Thomas G. Deering, Benjamin F. Langworthy, Harold L. Reeve, Warren B. Buckley, Church & Chowen, and Levinson, Becker, Peebles & Swiren, for appellants.

Gold & Liebman, and Leo Waxman, (Charles Liebman, of counsel,) for appellees.

Mr. Justice Murphy delivered the opinion of the court:

The Commonwealth Trust and Savings Bank of Chicago was closed by the Auditor June 22, 1932. The same day, plaintiff Joseph Weiss filed a representative action in

the superior court of Cook county against eighty-eight persons named as stockholders of the bank to enforce their superadded liability as stockholders. A month later, Carl S. Hood and A. M. Alderman instituted a similar action but did not name any of the stockholders. Later, the two cases were consolidated and an amended and supplemental complaint was filed and new parties added. Answers were filed on behalf of part of the defendants. The order of reference was as to a part of the defendant stockholders. A decree was entered September 21, 1939, which fixed the amount of unpaid liability for the several periods of ownership and entered judgment as to each defendant named in the order of reference.

A. G. Williams, Otto E. Lucius, Belle M. Lucius, Philip S. Graver, Albert E. Lucius, Edward B. Lucius, Mildred L. Lucius, Elizabeth Winship, Harriet Winship, Ida M. Wortendyke, Cornelius S. Kelly, Maurice J. Flynn, the Harris Trust and Savings Bank and Charles D. Heile, filed notice of appeal from such decree. The Chicago Title and Trust Company, individually and as executor of the last will and testament of Douglas V. Bussie, deceased, filed a cross-appeal. Plaintiffs Carl S. Hood, Joseph Weiss and A. M. Alderman also filed a cross-appeal as to certain parts of the decree.

The appellants in the initial appeal contend the decree violates the constitutional provision imposing liability upon stockholders for all liabilities accruing while he or she remained such stockholder because the terms "liabilities" and "liabilities accruing," as used therein, when applied to a single creditor, mean the net sum due from the bank to the creditor after crediting any amount due from such creditor to the bank and that no proof was made by plaintiffs as to the existence or non-existence of such liability and that, therefore, this involves a construction of the constitutional provision (section 6 of article 11,) imposing the liability, which gives this court jurisdiction by direct

appeal. In *Lewis* v. *West Side Trust and Savings Bank, ante,* p. 23, in which an opinion was filed at the February term, 1940, the same question was presented but the instant case was filed in this court before the decision of the *Lewis case,* so that the general rule, that the jurisdiction of this court can not be invoked by direct appeal when there has been a construction of the constitutional provision in controversy leaving no fairly debatable question, has no application. The controversy as to the liability of the Harris Trust and Savings Bank, as an alleged stockholder, necessitates a construction of the constitution on a question not heretofore considered. This court has jurisdiction on direct appeal.

Appellants made the claim that the decree is void for want of due process of law, in that it is based on an audit and modification thereof, which they claim was not taken from the records of the bank, but was made from the records of the receiver appointed in the liquidation proceedings. It is also asserted that the audit reflects book entries which were made after some of the defendants ceased to be stockholders. The claim is that none of this evidence was admissible for the reason it did not come within the rule which permits introduction of the contents of the bank books as admissions against the interest of the stockholders. The record discloses that all the liabilities of the bank detailed in the audit were taken from the books of the bank, except a few of the deposit liabilities not appearing in the bank's ledger because the sheets showing them had been removed by an absconding employee. The accountant who made the audit testified that, as to the liabilities supposed to have been entered on the sheets which were taken, he took the claims of such creditors as filed with the receiver and then checked them with the respective claimants. The evidence of the witnesses who testified in reference to the liabilities shows that the figures contained in the audit of liabilities were not taken from the receiver's record but

merely checked against it. Outstanding drafts, checks and certified checks not presented for payment, and the unpaid claims on account of liability for permitting the delivery of goods without payment of the accompanying sight draft with bill of lading attached, were added to the audit and shown by the work sheets, and the accountant testified he checked the work sheets for accuracy. The liability items in the audit above referred to which were not taken from the books of the bank aggregate $11,812.09. An examination of the decree in reference to the unsatisfied accrued liability for each period of ownership as it affects appellants, and a comparison of the liabilities for the same ownership period as fixed in the master's report discloses that the $11,812.09 was deducted in the decree and appellants were given the benefit of the deduction. It thus appears that all the accrued liabilities of the bank upon which the decree was based were taken from the books of the bank.

Offsets in the audit against certain deposit liabilities by way of credits on account of debts owing the bank by such depositors were not taken from the books of the bank but were taken from the receiver's records and entered in the audit as credits against the liabilities of the bank. Appellants claim that taking the offsets from the records of the receiver instead of from the books of the bank renders the whole audit inadmissible in evidence. The further contention is made that the burden was upon the plaintiffs to prove the net liabilities by crediting all offsets, and the decree fixing the amount of judgments can be based only on the net balance after deducting all such offsets. All of appellants' contentions in reference to the burden of proving offsets were decided adversely to their claims in *Hillmer* v. *Chicago Bank of Commerce,* 375 Ill. 266, and *Lewis* v. *West Side Trust and Savings Bank, supra.* In each of those cases it was held that the plain-

tiffs made a *prima facie* case by proving the same things that would be required in a suit by a depositor against the bank itself, plus proof as to the time the stockholders held their stock and the number and par value of their shares; that the liability books of the bank are admissible in evidence as admissions against interest of the stockholders who held stock when entries contained in the books were made that show liabilities accrued during their particular ownership of stock, and that the same is true as to such entries and each succeeding class of stockholders, all without showing the cross demands, if any, that the bank had against its creditors. The facts in this case come squarely within the rule laid down in the *Lewis case, supra.*

Inasmuch as the liability books of the bank were admissible in evidence against the defendants as admissions against interest and contained many thousands of such entries, it was not error to admit the audit in evidence. (*Comstock* v. *Morgan Park Trust and Savings Bank,* 367 Ill. 276.) The fact that the audit, as first prepared, was later modified by adding additional offsets increasing the amount from $22,000 to more than $32,000, in no way militates against its admissibility in evidence. The items of offset, including those added, were in the computation under the final audit upon which the decree was based, and the credits arising from all the offsets were given full effect and thereby operated to the benefit of the appellants. It was held in the *Lewis case,* plaintiffs were not required to furnish proof of any offsets. If there were other offsets that should have been included, the appellants had access to the sources of the testimony and ample opportunity to furnish proof of the same. They do not now contend that there were any other offsets not shown by the audit and which were not taken into consideration in the decree. They merely assert that there is strong probability that there are offsets which are not included, and that the bur-

den was on plaintiffs to make it conclusive that all were included. The decree does not violate the constitutional provision invoked by appellants.

On the claim that some of the entries were made in the bank books after certain of appellants ceased to be stockholders and could not, therefore, be considered as admissions against interest, it is sufficient to say that, other than above noted, the contention is directed against the offsets and not against liability entries. Since the offset entries inured to the benefit of appellants, they can not make complaint.

Appellant Charles D. Heile transferred his stock June 14, 1928. He was served with summons December 28, 1933. His plea setting up the five-year Statute of Limitations in bar of the action presents two questions: (a) When the cause of action against him accrued, and (b) the availability of the five-year Limitation statute. In *Sanders* v. *Merchants State Bank,* 349 Ill. 547, *Golden* v. *Cervenka,* 278 id. 409, *Schalucky* v. *Field,* 124 id. 617, and other cases, it was held the liability of the stockholder is primary, and that the stockholder is liable to the same extent as the bank, and that the depositor can not maintain an action against him until demand has been made upon the bank. In *Burnett* v. *West Madison State Bank,* 375 Ill. 402, it was held that the depositor's right of action against the stockholders for the constitutional liability would be barred by the same Limitation statute that bars his right of action against the bank. The defense offered by the Statute of Limitations is affirmative and the burden rests upon the one asserting it to show its applicability. (*Sanders* v. *Merchants State Bank, supra; Burnett* v. *West Madison State Bank, supra.*) Appellant did not show that any demand was made on the bank for payment at any time prior to the closing of the bank and, under the principles announced in the foregoing cases, the statute did not begin to run until

the bank closed June 22, 1932. The court did not err in its ruling on this point.

Appellants' claim that the books of the bank were not properly identified is without merit. Howard Levy, the cashier at the time the bank closed and for three years prior thereto, identified the several books and testified that, as cashier, he had general supervision over the making of the many entries. The fact that he had been cashier for only three years prior to the closing of the bank does not detract from his testimony. Although he did not have personal knowledge of the correctness of the entries made before his employment, he did know the books were those of the bank and from the entries could know the books were kept by the bank in the usual course of business and he so testified.

The stock certificate books produced contained the record of names of stockholders, the number and par value of their shares and the respective periods the shares were held. The correctness of this showing is not challenged. The fact that one of the attorneys for appellees stated at the hearing that he did not find the first stock certificate book has no effect on the admissibility or authenticity of the stock certificate books used in evidence.

The method used by the accountant in computing the accrued liabilities of the bank on deposits is the same as that in the *Lewis case, supra*. The several liabilities were arrived at by adding to the last deposits the last prior deposits sufficient to equal the amount of balance due the depositor. The claim that this method is incorrect is answered adversely in the *Lewis case, supra*, in *Hillmer* v. *Chicago Bank of Commerce, supra*, and other cases.

The contention is made that proceeding to a hearing and decree against only a part of the defendants, when the cause was at issue as to all defendants, was error. The decree appealed from was against all defendants mentioned

in the order of reference. No objection was made by appellants at the time of reference that any other defendant or defendants should be included. During the taking of testimony one of counsel for appellants stated that, in response to his request for a list of stockholders against whom the hearing was being held, he had been furnished with a copy of the order of reference, and understood the hearing was against the stockholders named in such order. Appellants participated in the hearing without objection and without making request to have the cause referred as to the omitted defendants, and their objections to this procedure were interposed to the master's report. When these objections were overruled by the master and by the court as exceptions, no motion was made to rerefer the cause and include the omitted defendants. Having thus acquiesced and participated in the proceedings without objection, appellants are in no position to complain. In *Munger* v. *Jacobson,* 99 Ill. 349, and *Golden* v. *Cervenka, supra,* the right to proceed against separate defendants was recognized. *Zimmerman* v. *Zeimer,* 363 Ill. 220, relied upon by appellants, is not applicable here, for it was there held a single creditor could not maintain a suit at law against a single stockholder because of an unfair advantage to other creditors. The procedure followed did not deprive appellants of their right to enforce contribution from other stockholders hereafter found liable and the record discloses no intention of appellees to abandon or delay the cause as to such other defendants.

The claim that appellants are charged with liabilities of the bank which did not remain unsatisfied at the date of the decree is without foundation. The summary of unsatisfied liabilities on the date the bank closed shows a total of $840,606.50, of which $362,904.28 was secured; $22,018.55 was deducted as offsets, leaving $455,683.37 as net unsecured liabilities. This latter amount was later corrected by a supplementary audit to $423,300.56 by

credits for other offsets allowed in the liquidation proceeding. Of $402,077.37, distributed by the receiver up to the time of the decree, $227,981.80 was paid on bills payable, and $154,450.99 on secured and preferred claims, none of which was included in the $423,300.56 net unsecured liabilities. The remaining $19,644.58 distributed was applied as a general dividend on the unsecured liabilities, leaving more than $400,000 of them still unpaid.

Appellant Otto E. Lucius purchased 10 shares of stock on February 5, 1930. On March 18, following, he transferred the shares to the bank "for reissue" and a certificate for 10 shares was issued to him and Belle M. Lucius as "joint tenants and not as tenants in common, with the right of survivorship." The decree fixed the liability of Otto E. Lucius at $1000 for the period he held 10 shares individually, and the liability of Otto E. and Belle M. Lucius at $1000 for the period they held 10 shares as joint tenants. The liabilities accruing during the first period were over $5000, and during the latter period over $330,000. Did the transfer start a new period of stock ownership? The liability imposed by the constitution is "an amount equal to his or her respective shares so held, for all liabilities accruing while he or she remains such stockholder."

To create an estate in joint tenancy it is necessary that there be unity of interest, unity of title, unity of time and unity of possession. To meet these essentials the several tenants must have one and the same interest accruing by one and the same conveyance commencing at one and the same time and held by one and the same undivided possession. (1 Cooley's Blackstone's Com. p. 455; *Deslauriers* v. *Senesac,* 331 Ill. 437; *Gaunt* v. *Stevens,* 241 id. 542.) We assume, as the briefs do, that the transfer of the stock was effected under circumstances to meet the requirements of section 2 of the Joint Rights and Obligations act to create a joint estate in personal property, but when Otto E. Lucius surrendered the first certificate and

caused the second to issue to him and his wife as joint tenants, he thereby terminated all title in the stock evidenced by the first certificate and thereafter held as a joint tenant with his wife. To create the joint estate it was essential that his interest as a joint tenant be created at the same time as that of his co-tenant, for if it be otherwise there would be no joint tenancy. By the creation of the joint estate the contractual relationship of Otto Lucius to the bank and its depositors was changed from that of an individual to that as a joint tenant. From the date he acquired his stock, February 5, 1930, to the date of the surrender of the certificate, March 18, constituted one period of ownership and from the date of the establishment of the joint tenancy on March 18 to the date the bank was closed constituted another period of ownership and the decree was correct in fixing the liability on that basis.

Foster S. Nims, owner of 10 shares of stock, died April 5, 1931. Letters testamentary were issued to appellant the Harris Trust and Savings Bank April 10, and July 24 of that year the bank surrendered the old stock certificate and a new one was issued in its name "as executor of the estate of Foster S. Nims, deceased." The appellant bank held the new certificate until April 22, 1932, when the estate was closed. The distributees of the estate refused to take the stock and a certificate in the name of one of such distributees was deposited with the clerk of the probate court. Liability of such distributee is later considered on the cross-appeal of plaintiffs. No claim was filed against the Nims estate by any creditor of the insolvent bank and no suit was brought within one year after the executor was appointed. The decree fixed liability against appellant "individually and as former executor of the estate" at $1000 for the period beginning with the date of the appointment, July 24, 1931, and ending at the closing of the estate April 22, 1932. Liabilities in excess of $99,000 accrued during that period. The amended and

supplemental complaint alleged liability against the Harris Trust and Savings Bank individually and as executor. It answered in the same capacities. No finding of liability against the estate was sought or decreed.

Section 6 of article 11 of the constitution declares that "every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors as therein specified." Whether the Harris Trust and Savings Bank is individually liable depends upon whether the transfer of the stock of the Nims estate to it constituted it a stockholder within the meaning of the constitutional provision.

In determining the liability of a person, who it was claimed was a stockholder, although the stock had not been transferred to such person upon the books of the bank, this court, in *Gahagen* v. *Whitney,* 359 Ill. 419, 422, said: "The constitution contemplates that the actual owner of the stock shall bear the liability arising thereon. It is not necessary to the establishment of stock liability of the actual owner of the stock that the shares be transferred on the books of the company. It is a rule recognized in this State and elsewhere, that where it is sought to hold the real owner of the stock, though his name does not appear upon the transfer books of the bank, the court will determine who is the real owner and decree accordingly."

In the *Lewis case, supra,* certain shares of stock were transferred on the books of the bank to certain persons who had either objected to becoming owners of stock or who had never intended to become owners, but the stock had been transferred, and they thereafter repudiated the ownership which purported to come from such transfer. It was held that the question of ownership was one of fact, and since there was no intention on the part of the persons whose names appeared on the books of the bank as owners of stock to become owners, they were not personally liable. From these cases it appears that the established rule is that

in determining the liability of a stockholder of a bank to a bank's creditors, the court may look beyond what appears on the face of the certificate and the bank books to find the real owners.

The Nims will is not in the record. In the absence of provisions to the contrary, we must assume the powers the appellant bank had as executor, in reference to the stock, were limited to the general powers an executor possesses, that is, to collect, to pay the debts and make distribution. The only action the appellant bank appears to have taken in reference to the stock was to surrender the certificate which the testator held, to have a new one issued in its name as executor of the Nims estate, and at the conclusion of the administration to transfer such certificate to a beneficiary named in the will. Each of these acts was in accord with its general duties as executor, and no presumption arises that appellant bank was undertaking to exceed such powers and become the real owner of the stock. When the bank qualified as executor, it became possessed of the same title in the stock the testator had, and the transfer on the books, under the circumstances shown, did not create in appellant any different title than it possessed prior to the transfer. Furthermore, there is no evidence indicating the executor intended that the transfer on the books of the bank should create any interest in it other than the interest it had as executor of the estate.

In *Golden* v. *Elwood*, 299 Ill. 73, the action was to impose an individual liability upon the persons who were the executors of the Elwood estate. The executors had caused 50 shares of stock, which Isaac L. Elwood had in the LaSalle Street National Bank, to be exchanged for a like number of shares in the LaSalle Trust and Savings Bank. The new certificate was issued to the "Estate of Isaac L. Elwood." The stock was held for a period of time, and in the interim the executors received, in their representative capacity certain dividends on the stock. After

an attempt to hold the estate liable for the shares, in *Golden* v. *Cervenka,* 278 Ill. 409, the creditors undertook to impose a personal liability upon the executors. It was held the unauthorized investment of the estate funds in bank stock and the receipt of the dividends on behalf of the estate were not sufficient to support a personal liability against the executors.

There is nothing in the transfer of the 10 shares of stock to the appellant bank, or in the manner· it appears on the books of the bank, which would support a holding of personal liability against the appellant bank, and the chancellor erred in so holding.

Plaintiffs on their cross-appeal complain of the holding that Helen Wells Blount, an executrix of the estate of Russell L. Blount, deceased, is liable on account of stock owned by decedent only out of assets of the estate inventoried or accounted for after one year from the issuance of letters testamentary. They claim that all the assets of the estate are liable. The decedent owned no stock after April 15, 1929. He died November 19, 1933. The executrix was appointed November 24, 1933. All assets were inventoried within one year thereafter. She was discharged December 14, 1934. No claim was ever filed against the estate. Decedent was one of the defendants named in the complaint in this proceeding, but, so far as disclosed by the abstract, he was not served with process, did not enter his appearance or file any answer. On April 19, 1934, his death was suggested and the executrix was made a party defendant. Summons against her was issued on November 27, 1934, and served November 30, 1934.

The settled law of this State is that if a claim is not exhibited to the county or probate court, or if suit is not commenced thereon within the time fixed by statute for filing claims, the claim is barred as to all property inventoried or accounted for during the period. (*Darling* v. *McDonald,* 101 Ill. 370; *Sanders* v. *Merchants State Bank,*

*supra.*) When this estate was administered upon, the statutory period for filing claims was within one year after the appointment of the executrix. (Ill. Rev. Stat. 1937, chap. 3, par. 71.) In *Wallace* v. *Gatchell,* 106 Ill. 315, cited by cross-appellants, it was held that when a claim is exhibited in the county court within the statutory period and allowed, it is entitled to participate in all the assets inventoried or accounted for, without a summons issued within the period. That case has no application here. This is a suit against the personal representative in the circuit court. Section 5 of the Civil Practice act, (Ill. Rev. Stat. 1935, chap. 110, par. 129,) as then in force, provided: "Every civil action, unless otherwise expressly provided by statute, shall be commenced by the issuance of summons." The summons against the executrix was issued November 27, 1934, which was not within one year from November 24, 1933, the date of appointment. Since the suit was not commenced within the statutory period there was no liability and the holding of the trial court was correct. *Morse* v. *Pacific Railway Co.* 191 Ill. 356; *Roberts* v. *Flatt,* 142 id. 485; *Snydacker* v. *Swan Land Co.* 154 id. 220.

Another holding complained of by the plaintiffs on their cross-appeal is the denial of judgment against Chicago Title and Trust Company individually and as executor of the estate of Douglas V. Bussie, deceased. He owned 10 shares of stock on the day of his death, June 3, 1931. His will made no specific bequest of stock. The only relation of Chicago Title and Trust Company to it arose by reason of the executorship. The executor was appointed July 15, 1931, and disposed of the shares on September 12, 1931. The shares never appeared on the books of the bank in the name of Chicago Title and Trust Company, either individually or as executor. During the period of administration of the estate and while the stock was with

the executor, the bank incurred liabilities far in excess of the par value. No claim for stock liability was filed in the probate court and no suit was instituted in any court within a year from the appointment of an executor. All assets of the estate, including the 10 shares of stock, were inventoried within the year. The Chicago Title and Trust Company was not made a party to this suit until the filing of the amended bill on June 8, 1933, almost two years after the issuance of letters testamentary. Plaintiffs say no claim is made against the Chicago Title and Trust Company, as executor, to be paid either out of property inventoried within the year or afterward inventoried. This leaves only the alleged individual liability for consideration. The Chicago Title and Trust Company did not have a new certificate of stock issued to it and there was no new contractual relationship established out of which an individual liability could arise. What was said in disposing of the question of liability of the Harris Trust and Savings Bank, as executor of the Nims estate, answers the point raised, adversely to the contention of plaintiffs. There was no error in the decree on this point.

Still another subject of plaintiffs' cross-appeal is the holding of non-liability as to Isabelle Nims Garn, one of the distributees in the estate of Foster S. Nims, deceased, of which the Harris Trust and Savings Bank was executor. The liability of the executor has been hereinabove considered. Mrs. Garn is one of the daughters of decedent. In connection with the distribution of the assets of the estate the executor surrendered the stock certificate issued to it and caused one to issue in the name of Mrs. Garn. She was called to the office of the executor and the certificate so issued was tendered to her. She refused to accept it but signed a blank transfer and power of attorney on the back of the certificate. The certificate was then returned by the executor to the Commonwealth Trust and

Savings Bank and a new one was issued in the name of Josephine Reilly Nims, another daughter of decedent. She also refused to accept the certificate and the executor then deposited it with the clerk of the probate court. The certificate issued in Mrs. Garn's name bears date April 22, 1932, and the bank records show its return May 3, 1932. The evidence shows it was not presented to her until some time after it was issued, and she immediately refused to accept it. Under those circumstances, her signature to the blank transfer and power of attorney, which would facilitate and simplify book entries at the bank, cannot be construed as an acknowledgment by her of ownership of the stock. The chancellor correctly held she is not liable.

On the cross-appeal plaintiffs claim that the trial court erred in not allowing interest and in the taxing of costs. The decree does not show that the chancellor ruled on either of said matters. In the absence of such ruling there is nothing presented for review. If plaintiffs desired to present those questions on appeal they should have insisted upon and procured a ruling by the chancellor. *Lewis* v. *West Side Trust and Savings Bank, supra.*

In view of the affirmance of the decree holding the Chicago Title and Trust Company not individually liable, it is unnecessary to consider the cross-appeal of the Chicago Title and Trust Company.

The decree of the superior court is affirmed except as to the individual liability of the Harris Trust and Savings Bank and as to that item it is reversed.

*Affirmed in part and reversed in part.*

Mr. JUSTICE SHAW, dissenting.