Martha M. PETRI, Administratrix, etc., Plaintiff-Appellant,

v.

Minnie RHEIN, Defendant-Appellee.

No. 12218.

United States Court of Appeals Seventh Circuit.

June 27, 1958.

Melvin E. Levinson, Chicago, Ill., I. Harvey Levinson, Chicago, Ill., for appellant.

John E. Toomey, Chicago, Ill., for appellee.

Before FINNEGAN and PARKINSON, Circuit Judges, and MERCER, District Judge.

FINNEGAN, Circuit Judge.

Leo F. Petri, now deceased, supplied his niece, defendant here, with financial aid from the time her father died in 1908 until sometime in 1948, when Petri mar-

ried. The plaintiff, Martha M. Petri, administratrix with the will annexed of the Estate of Leo F. Petri, brought the action below for declaratory judgment as to the ownership of shares of corporate stock, in Minnie Rhein's possession. There are two main blocks of stock involved: (1) shares originally owned by Leo F. Petri and transferred July 31, 1948 and March 17, 1950 by him to Rhein and himself as joint tenants with the right of survivorship. These consisted of 400 shares, Union Carbide and Carbon Corporation transferred first, followed in March by another 150 shares of the same corporation, and on the same day in March 305 shares of FitzSimmons & Connell Dredge & Dock Company were similarly transferred to Petri and Rhein, and (2) 340 shares in Great Lakes Dredge and Dock Company issued December 21, 1949 in the names of Leo Petri and Minnie Rhein as joint tenants with the right of survivorship. But these latter certificates were never in the name of Petri alone. In her brief the appellant Administratrix informs us, as to the second block of 340 shares: "Appellant does not raise this issue on appeal."

All of the transfers were accompanied by joint tenancy agreements and this legend on the reverse side of the stock certificates: "For value received I hereby sell, assign and transfer unto Leo F. Petri and Miss Minnie Rhein as joint tenants with the right to survivorship and not as tenants in common, P. O. Box 105, Lake Mills, Wisconsin  *  *  * shares of the capital stock represented by the within certificate. Signed Leo F. Petri." Other relevant facts, not clearly erroneous under Rule 52, Federal Rules of Civil Procedure, 28 U.S.C., appear in D.C.Ill.1958, 162 F.Supp. 834, and we neither repeat nor disturb these findings.

■ We are aware of the early reluctance of Illinois courts to allow creation of a joint tenancy in personal property, as manifested, for example by In re Wilson's Estate, 1949, 404 Ill. 207, 88 N.E.2d 662, 14 A.L.R.2d 940. But we think the evidentiary support traced in the record before us for creation of such an estate between Petri and Rhein warranted the result reached by the district judge. Plaintiff's chief theory put forward as the basis for claiming ownership of the certificates, or shares, is that the transfer by Petri to himself and Rhein failed to create a joint tenancy because the unities of time and title were lacking. Petri, plaintiff contends, acquired no new ownership in the shares when he transferred to himself and Rhein, hence the interest of Rhein and Petri were not derived from the same conveyance simultaneously—or translated into practical terms Petri should have conveyed to a "straw man" and then the "straw" transfer to Petri and Rhein. But we think such a fiction was obviated by § 2 of the Joint Rights and Obligations Act of Illinois, Ill.Rev.Stat.1941, chap. 76, § 2, as amended, when read with Hood v. Commonwealth Trust & Sav. Bank, 1941, 376 Ill. 413, 34 N.E.2d 414.

There are clear unequivocal written agreements received in evidence expressing intention of creating the Petri-Rhein joint tenancy, with the right of survivorship in 400 shares of the Union Carbide and Carbon Corporation stock and 340 shares of Great Lakes Dredge and Dock Company. However, no such joint tenancy agreements appear of record for 150 shares of Union Carbide & Carbon Corporation stock dated March 20, 1950, nor for 300 shares of FitzSimmons & Connell Dredge & Dock Company, dated March 17, 1950, but both classes of shares bear the legend "Leo F. Petri and Miss Minnie Rhein as joint tenants with right of survivorship and not as tenants in common." In any event there is no doubt as to the identity of the subject matter of these joint tenancies—all the stock certificates are indisputably identified concurrently with the written declaration of intention to create the joint

tenancy. Ill.Rev.Stat.1941, chap. 76, § 2,[1] S.H.A. ch. 76, § 2, as amended.

The estates in joint tenancy were created by a transfer of the stock certificate, each time, from Petri as owner to himself and Rhein. While plaintiff contends this does violence to the common law principle of the four unities we think what was said in Hood v. Commonwealth Trust & Savings Bank, 1941, 376 Ill. 413, 423, 424, 34 N.E.2d 414, 420 governs here: "To create an estate in joint tenancy it is necessary that there be unity of interest, unity of title, unity of time and unity of possession. To meet these essentials the several tenants must have one and the same interest accruing by one and the same conveyance commencing at one and the same time and held by one and the same undivided possession. * * * We assume, as the briefs do, that the transfer of the stock was effected under circumstances to meet the requirements of section 2 of the Joint Rights and Obligations Act to create a joint estate in personal property, but when Otto E. Lucius surrendered the first certificate and caused the second to issue to him and his wife as joint tenants, he thereby terminated all title in the stock evidenced by the first certificate and thereafter held as a joint tenant with his wife. To create the joint estate it was essential that his interest as a joint tenant be created at the same time as that of his co-tenant, for if it be otherwise there would be no joint tenancy. By the creation of the joint estate the contractual relationship of Otto Lucius to the bank and its depositors was changed from that of an individual to that as a joint tenant. From the date he acquired his stock, February 5, 1930, to the date of the surrender of the certificate, March 18, constituted one period of ownership and from the date of the establishment of the joint tenancy on March 18 to the date the bank was closed constituted another period of ownership and the decree was correct in fixing the liability on that basis."

■ Rule 52 makes it unnecessary to discuss the findings made below on the question of whether a valid *inter vivos* gift was made under Illinois law. Weight of the evidence and credibility of witnesses are matters for the trial judge.

Judgment affirmed.

---

1. "Survivorship rights abolished—Exceptions—Bank accounts and deposits—Stocks, bonds, etc.] § 2. Except as to executors and trustees, and except also where by will or other instrument in writing expressing an intention to create a joint tenancy in personal property with the right of survivorship, the right or incident of survivorship as between joint tenants or owners of personal property is hereby abolished, and all such joint tenancies or ownerships shall, to all intents and purposes, be deemed tenancies in common; provided, that when a deposit in any bank or trust company transacting business in this State has been made or shall hereafter be made in the names of two or more persons payable to them when the account is opened or thereafter, such deposit or any part thereof or any interest or dividend thereon may be paid to any one of said persons whether the other or others be living or not, and when an agreement permitting such payment is signed by all said persons at the time the account is opened or thereafter the receipt or acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made. Provided further, that when shares of stock, bonds or other evidences of indebtedness or of interest are or have been issued in the joint names of two or more persons or their survivors by corporations authorized to do business in this state, profits, dividends or other rights thereon or accruing thereto may be paid or delivered in whole or in part to any of such persons whether the other person or persons be living or not, and when an agreement permitting such payment or delivery is signed by all said persons at the time when the shares of stock, bonds or evidences of indebtedness or of interest were issued or thereafter, the payment or delivery to any such person, or a receipt or acquittance signed by any such person, to whom any such payment or any such delivery of rights is made, shall be a valid and sufficient release and discharge of any such corporation for the payment or delivery so made."