## Soft-Lite Lens Company, Inc., Appellee, v. Ante Ritholz et al., Appellants.

### Gen. No. 40,591.

Opinion filed June 21, 1939.   Rehearing denied July 3, 1939.

CLARENCE T. MORSE, of Chicago, for appellants.

MAYER, ALTHEIMER & KABAKER, of Chicago, for appellee; HERMAN A. KABAKER and RICHARD H. DEUTSCH, of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is a suit in chancery by the plaintiff, Soft-Lite Lens Company, Inc., a New York corporation, against the defendants, Ante Ritholz, Benjamin D. Ritholz, Morris I. Ritholz, Samuel J. Ritholz, Fannie Ritholz, Sylvia Ritholz and Sophia Ritholz, co-partners. The action is for alleged unfair competition. In its complaint the plaintiff alleges that the defendants unlawfully and unfairly compete with plaintiff's business by selling and offering for sale and fraudulently substituting and palming off a product in imitation of plaintiff's product with the intent of deceiving purchasers; that the plaintiff has suffered loss thereby and if said acts are permitted to continue they will result in unfair competition and irreparable loss to the plaintiff. The prayer of the plaintiff is for a permanent injunction and for damages in the sum of $25,000.

The pleadings consist of plaintiff's complaint and the defendants' amended answer thereto. No point is made as to the sufficiency of the pleadings by the parties. The case was referred to a master in chancery, who rendered his report recommending that a decree be entered as prayed for in the complaint, and the court entered such decree, from which this appeal is taken.

The plaintiff and its predecessor have for many years been in the business of selling and distributing tinted eyeglass lenses made exclusively for the plaintiff by Bausch & Lomb Optical Company pursuant to a secret formula owned by the plaintiff. These lenses are sold under the name of "Soft-Lite" and the plaintiff is the owner of registered trade-marks embodying said name. The defendants, as copartners, operate a chain of re-

tail optical stores in Chicago and in other places. It is claimed that the defendants on numerous occasions palmed off lenses other than the plaintiff's product when the plaintiff's product was called for and as evidence thereof the plaintiff offered testimony covering four instances wherein persons, each with an oculist's prescription for a pair of glasses, took their prescriptions to stores of the defendants and requested that said prescriptions be filled. Each of the prescriptions designated that it should be filled by using Soft-Lite lenses. By reason of plaintiff's advertising and the long usage of the name by the plaintiff and all those engaged in the optical business, ''Soft-Lite'' had become known and recognized as being the eyeglass lens manufactured by Bausch & Lomb Optical Company for the plaintiff and sold and distributed by it. The four prescriptions were filled and glasses therefor were delivered, but none of the lenses in the four pair of glasses were Soft-Lite lenses, the product of the plaintiff. In each instance the defendants had palmed off lenses in imitation of the plaintiff's product without the knowledge or consent of the customer or the doctor whose prescription was filled, and thus perpetrated a fraud upon the purchaser of the glasses, the doctors who had issued the prescription and upon the plaintiff.

It is claimed that by reason of the fact that the ultimate consumer is unable to differentiate between the plaintiff's product and other lenses of a similar appearance, the plaintiff, for the protection of the ultimate consumer, has created a method of distributing its lenses through licensees. Any oculist, optometrist or optician doing his own dispensing is required to have a license in order to obtain lenses from the plaintiff. Those individuals who do not do their own dispensing need not have a license but their prescriptions must be filled by a dispenser having a license in order to assure the delivery of genuine Soft-Lite lenses. In addition to the above-described licensing system the plaintiff

furnishes a printed protection certificate to dispensers who deliver the certificates with each pair of glasses as their assurance to the consumer that the lenses are genuine Soft-Lite lenses.

The master heard all of the testimony and observed each of the witnesses on the stand and, from his report, concluded that in all four instances lenses other than Soft-Lite had been provided without the knowledge or consent of the purchasers or of the doctors who had issued the prescriptions, and that in each of the four instances the defendants were guilty of palming off a product other than the plaintiff's when the plaintiff's product was called for. The chancellor sustained the master's report in all respects, and a decree was entered, as we have already indicated.

The defendants contend that in an unfair competition case the burden is on the plaintiff to prove by a clear preponderance of the evidence: (1) That the defendants are in competition with plaintiff, and that defendants so conducted their business as to intentionally palm off on the public goods of the defendants as the goods of the plaintiff; (2) that such palming off has resulted in financial loss to the plaintiff unless an injunction is issued; (3) that in the conduct of its own business, plaintiff's representations and business conduct is free from false representations and dishonest methods so as to justify relief from a court of equity; that it is free from the taint of "unclean hands" in bringing the suit; and (4) that the allegations of plaintiff's bill are true.

In the discussion by the court of the merits of this appeal it is apparent that certain of the allegations made by the plaintiff in regard to trade marks were not urged in its litigation. This applies with equal force to the allegation in the complaint regarding the secret formula, which is not pressed by the plaintiff in its argument before this court. In a further allegation the plaintiff claimed $25,000 damages, but upon the trial

stipulated that no monetary damages would be asked, so by the suggestions offered upon the facts, the issue has been reduced to the question of whether proof of the plaintiff has established that the defendants have palmed off a product other than the plaintiff's when the plaintiff's product has been called for. In discussing this question we have considered the case of *Stevens-Davis Co. v. Mather & Co.*, 230 Ill. App. 45, cited by both parties to the litigation, and in order to apply the conclusion reached by the court in that case it is necessary that we have in mind what the court said upon the question that is pertinent in this appeal. In this case, which was one in which the plaintiff sought injunctive relief against alleged unfair competition, the court upon the question as to what was unfair competition, said:

"The question which now confronts us is, whether the 'palming off' doctrine has been erroneously considered to be a rule of decision, when in fact it was merely a term descriptive of a typical class of cases; and if it has been correctly regarded as a rule of decision, is it the rule that has been adopted by the Supreme Court of this State? The 'palming off' doctrine has been accepted by the courts in England and America, including the Supreme Court of the United States, with few exceptions, as the rule of law itself, and not as a descriptive term or classification of the most typical cases illustrative of the rule. It may be that it would have been better if the rule originally had been framed in more general terms, but the fact is that it was not. 'The legal doctrine of unfair competition is a development of the fundamental idea that it is against public policy that the goods of one person should be offered for sale or sold as those of another. Very few cases dealing with the question were decided in England or America prior to 1850.' Nims on Unfair Competition and Trade-Marks (2nd ed.), p. 4. With the decision of the Supreme Court of the United States in the case of *Lawrence Mfg. Co. v. Tennessee Mfg. Co.*, 138 U. S.

537, which announced the 'palming off' rule, 'The doctrine of unfair competition may be regarded as being finally established in the United States; and as based not only on fraud on the public, but on the plaintiff.' Hopkins on Trade-Marks and Unfair Competition (3rd ed.), p. 42. . . .

"The courts in this State do not treat the 'palming off' doctrine as merely the designation of a typical class of cases of unfair competition, but they announce it as the rule of law itself—the test by which it is determined whether a given state of facts constitutes unfair competition as a matter of law. As the Supreme Court of this State said in the case of *DeLong Hook & Eye Co. v. Hump Hairpin Mfg. Co., supra,* quoting from the Supreme Court of the United States in the case of *Howe Scale Co. v. Wyckoff, Seamans & Benedict, supra:* 'If defendant so conducts its business as not to palm off its goods as those of complainant, *the action fails.*' We are of the opinion from our examination of the authorities, that the 'palming off' doctrine has been followed by both the state and federal courts in an almost unbroken line of decisions, as a rule of law, and that the courts of this state also deem it to be a rule of law."

And then when we come to consider the degree of proof necessary in a case of the character before us, we find that in this same case the court said:

"The next question to be determined is, what is the degree of proof imposed on one seeking relief on the ground of unfair competition? Counsel for appellants maintain that appellee must prove its case beyond a reasonable doubt and in support of their contention cite the case of *Candee, Swan & Co. v. Deere & Co.,* 54 Ill. 439. Counsel for appellee assert that they have established the right of appellee to relief by a 'preponderance of the evidence.' They refer to no authority. In our opinion neither contention is correct. It is true that in the case of *Candee, Swan & Co. v. Deere & Co., supra,* the court said (p. 467): 'We believe the rule to

be, in such cases, the proof must be clear, leaving the question beyond a reasonable doubt'; but although that case has not been expressly overruled it has not been followed in subsequent cases. The question involved in that case related to a violation of a trade-mark, but the 'essential element is the same in trade-mark cases as in cases of unfair competition. . . .

"In our opinion appellee is required to prove its case clearly by the evidence, and a slight preponderance of the evidence is not sufficient; there must be a clear preponderance."

To pass upon the question as to whether the plaintiff has established its case by a clear preponderance of the evidence it will be necessary to discuss the facts that are important upon this question. In this connection the defendants have called to our attention that the plaintiff failed to prove competition with the defendants, particularly within the territorial limits of the city of Chicago; that the plaintiff does not sell to the public, but to wholesalers; that the defendants, on the other hand, sell directly to the public through their 62 retail optical stores. It was therefore suggested that the plaintiff was not in competition with the defendants, who were retailers and dealt directly with the public. The defendants call our attention to the case of *Corning Glass Works v. Corning Cut Glass Co.,* 197 N. Y. 173, wherein that court said: "The difficulty with the plaintiff's case is that it has not been able to show that its business is interfered with by any competition on the part of the defendant. . . . It is inconceivable that it may maintain an action for the alleged protection of some of its customers, who are not complaining, and . . . as a matter of fact, these customers are found not to have been interfered with by any competition of the defendant," and suggest that there is no proof of any sales to the public in the Chicago territory, and that the plaintiff is clearly not entitled to any protection in that market, citing a number of cases. However, the proof we have before us is the evidence that

the defendants palmed off their goods as those of the plaintiff when the plaintiff's goods were called for, and this was established by the evidence of F. C. Decker and E. T. Summers, who testified they appeared at the defendants' place of business for the purpose of having lenses furnished by the defendants as called for by the prescription, and it appears from the facts as disclosed, that Decker and Summers were persuaded by the defendants' employees to accept something other than Soft-Lite lenses, even though the prescriptions for the glasses designated said lenses, while in this regard the testimony is conflicting and the evidence of Gladys Monroe and F. J. Fleischer is to the effect that they had their eyes examined, took the doctors' prescriptions to stores of the defendants and requested the defendants to fill them. At a subsequent time, they returned to the respective stores and paid for and received their respective glasses from the defendants. In each of these instances, the prescription provided that it was to be filled with Soft-Lite lenses. The glasses when received were identified by each witness by pasting labels containing the witness' name or initials, date and the source of the glasses on each lens. The defendants maintain that the lenses used in said glasses were Soft-Lite lenses. The plaintiff, however, maintains that it has proved beyond question that Soft-Lite lenses were not used. The report of the master was based largely upon the evidence here detailed for the purpose of a report with his suggestions and conclusions as to the relief that should be granted by the court. The master heard all the testimony and observed each of the witnesses on the stand and concluded that in all four instances lenses other than Soft-Lite had been provided without the knowledge or consent of the purchasers or of the doctors who had issued the prescriptions and that in each of the four instances the defendants were guilty of palming off a product other than the plaintiff's when the plaintiff's product was called for.

The defendants in the discussion of the evidence considered by the master and approved by the court severely criticized plaintiff's witnesses Decker, Summers, Gladys Monroe and Fleischer, and refer to them as "snoopers," or "spies," and that they were paid investigators to do the things to which they testified. The question that has been called to the attention of the court might be food for consideration by the master, as well as by the court, in determining the weight of the evidence and the credibility of the several witnesses, but we have not been able to find anything in the evidence which would justify our consideration of defendants' criticism. The purpose of the plaintiff in this action was to discover whether the defendants were actually palming off goods as the plaintiff's, when in fact the product was not the plaintiff's, and in doing so, we find nothing which would justify the conclusion that these witnesses were not competent to testify. The plaintiff has called our attention to the case of *Coca-Cola v. Happiness Candy Stores, Inc.,* 19 Del. Ch. 292, 167 Atl. 900, where the court made the pertinent statement: "The fact that the customers who made these calls for Coca-Cola were investigators in the employ of the complainant is of no material significance. . . . While no one relishes the thought of sending out persons to 'snoop' upon another, yet the very necessity of the case in such matters as this almost impels reputable men to resort to that sort of thing as a protection against the unfair tactics of a suspectedly dishonest competitor."

In a further discussion of this subject it might be well to have in mind the quotation from Nims on Unfair Competition and Trade Marks (3d Ed.), sec. 337, p. 867, called to our attention by the plaintiff. The author states:

"Evidence of defendant's willingness to pass off, and of his practice of doing so when chance offers, is difficult to obtain.

"Often investigators must be used to obtain it through test purchases of defendant's goods in the open market. Such investigators are not deceived in making purchases, but that does not make their evidence inadmissible or detract from its weight. It is important as showing the course of action pursued by the defendant. . . . Such evidence is a valuable aid to the court in deciding as to the effect of his acts on the sale of plaintiff's goods and upon the minds of buyers. Where there is no proof of sales to persons other than agents in the employ of plaintiffs, defendant often urges that no injunction should issue, inasmuch as no such course of conduct has been proved as will show by a clear preponderance of the evidence that there was intentional fraud, and also inasmuch as plaintiff has no cause of complaint against a defendant for damages resulting from an act done by defendant at the instance and solicitation of plaintiff's agents. If the defendant's employees did not know at the time that the purchasers were in plaintiff's employ, evidence of this sort discloses defendant's intent and purpose exactly the same as if the sales were made to purchasers not buying in order to obtain evidence against the seller." We are satisfied that the purpose of these witnesses who testified regarding the purchases made from the defendants was to determine the question as to whether the defendants were guilty of palming off on these witnesses lenses which were not called for by the prescriptions presented to the defendants. The question that follows is whether the plaintiff in failing to offer evidence as to the damages suffered did not establish a case which would justify the court in entering the decree in the instant case.

The plaintiff points to the contention of the defendants appearing in their brief to the effect that the plaintiff did not offer any specific proof of the damages sustained by it by virtue of the defendants' palming off. The plaintiff stipulated in the case that no mone-

tary damages were being asked by it, and the plaintiff further sets forth that this does not mean that none have been sustained by the plaintiff, and if the plaintiff saw fit to waive its rights to damages during the trial of the case, the defendants should not be heard to complain.

The important question in a case of the character now before the court on appeal is whether the acts charged against the defendants if continued would result in damages injurious to the plaintiff's business. Of course if such acts were injurious the plaintiff could appeal to a court of equity and pray for an injunction in a proper case, restraining the defendants from carrying on such course. Our attention has been called to the case of *Akron-Overland Tire Co. v. Willys-Overland Co.*, 273 Fed. 674, where the court held that the defendant had taken no business away from the plaintiff and that the plaintiff's loss was problematical and speculative, but it nevertheless rendered an injunction against the defendant. In a like case, entitled *Rice & Hutchins, Inc. v. Vera Shoe Co., Inc.*, 290 Fed. 124, the court in granting an injunction stated that it must assume that if unrestrained the defendant would pursue its business to the injury of the plaintiff and the danger of injuries was sufficient ground for the restraining arm of the court of equity. The same rule was followed in the case of *Vogue Co. v. Thompson-Hudson Co.*, 300 Fed. 509. The court there sustained an injunction and held that the reasonable probability of injuries to the plaintiff by acts of the defendant was clear even if it had not occurred. In the case of *Wall v. Rolls-Royce of America, Inc.*, 4 F. (2d) 333, the court held that the continued practice of the defendant was so fraught with such possibilities of irreparable injury that the only way to remedy it was to stop it at the start.

The rule that we have just stated would apply with equal force to the facts as they appear in this record

and the possibility of injury to the plaintiff's business resulting from palming off.

Many cases are cited in the briefs filed by the parties, all of which we have examined, and only a few of which we have cited in support of the position taken by us.

The defendants urge that the plaintiff must come into court with clean hands; that the plaintiff comes into equity as a law violator and an admitted wrongdoer in the conduct of its business and therefore is barred from relief in equity, and suggest in support of their position the evidence received by the master of the proceedings against the plaintiff by the Federal Trade Commission, in which the plaintiff admitted it was guilty of such unfair practices, in that it was attempting to build up a monopoly, and that the cease and desist order entered in the Federal Trade Commission proceedings is based upon plaintiff's licensing system, to which attention has been called, and plaintiff's admission that it was a violator of sec. 3 of the Clayton Anti-Trust Act (15 U. S. C. A.); that the applicable gist of said act is that it is unlawful for a dealer to enter into an agreement that the purchaser will not use or deal in the goods of others. Upon a hearing, the plaintiff objected to the introduction of these documents, but they were received by the master and considered by him in making his report.

The 13 items which were part of plaintiff's advertisement and objected to by the defendants, were commented upon by the master in his report, and he pointed out evidence supporting these items to some extent, and also commented as to certain items that were a part of the record, and finally made his recommendations to the court, which were sustained by the decree of the court entered in this proceeding. As to the objection that evidence was received by the master in regard to the proceedings against the plaintiff before the Federal Trade Commission, the question

arises: What connection did that proceeding have with reference to the questions involved in the case before this court? The general rule followed by the courts that the plaintiff must come into a court of equity with clean hands would apply only in regard to the subject matter in which the plaintiff was concerned and in regard to which it was before the court, and from an examination of the facts as we have them before us it has not been established that the acts of the plaintiff of which complaint is made, had any direct bearing upon the defendants' business or upon the controversy between the parties. The plaintiff has called to our attention the case of *Tinkoff v. Wyland,* 272 Ill. App. 280, wherein the defense of unclean hands was raised. The court in that case held that the rule of equity which forbids relief to him who is guilty of inequitable conduct applies only where the improper conduct concerns the very transaction of which complaint is made, and this rule was followed in the case of *MacMurray v. Flynn,* 291 Ill. App. 294. The plaintiff suggests that in the case of *Stevens-Davis Co. v. Mather & Co.,* 230 Ill. App. 45, cited and relied upon by the defendants, the court held that the maxim that he who comes into a court of equity must come with clean hands is limited in its application where the substance of the thing is inequitable; that the inequity must apply to the particular subject matter and must be connected with the matter in litigation.

In the case of *Mossler v. Jacobs,* 66 Ill. App. 571, where the question was whether the advertising of the plaintiff was untrue and hence the plaintiff came into court with unclean hands, the court in passing upon this defense held that the advertisements mentioned had no connection with the defendants or their business, or the controversy with the plaintiff. So, we are inclined to the view that this rule is not applicable to the instant case, because the defense of unclean hands is not the subject of controversy between the parties.

It is also claimed by the defendants that by the plaintiff's method of selling through licensees it was guilty of creating a monopoly in restraint of trade, and in support of this contention the defendants rely largely upon a matter before the Federal Trade Commission—which has been called to our attention—in which the plaintiff was involved. While the plaintiff contends the matter is not properly before this court, still it does not rely upon that fact as a defense to the defendants' claim, even though it does not concede its right to raise such a defense.

The plaintiff admits that a complaint was filed against it by the Federal Trade Commission based upon the question of method of distribution by the plaintiff. The plaintiff in that case entered into a stipulation with the Federal Trade Commission for the purpose of avoiding costly litigation and it was based upon that stipulation that an order was entered, and from what has been called to our attention it appears from the very terms of the order that while the plaintiff consented to broaden its manner of distribution, the Federal Trade Commission, aware of the danger to the plaintiff of other people palming off its products as those of the plaintiff, acknowledged in said order that the plaintiff's manner of distribution had been evolved for the purpose of preventing that wrong and endeavored to continue to protect the plaintiff in that regard.

While the subject matter of the proceeding before the Federal Trade Commission is of no material benefit to the court in deciding the questions involved in the instant case, yet the subject matter has been called to our attention, and we think we ought to consider the question as to what, if any, effect the action of the Federal Trade Commission proceeding would have upon the plaintiff's being charged with conduct such as would make it guilty of coming into equity with unclean hands and thus barred from the relief prayed

for in its complaint. It seems that the question in that matter was the licensing of distributors in the distribution of the plaintiff's product.

Upon this question the plaintiff cites the case of *Federal Trade Commission v. Raymond Brothers-Clark Co.*, 263 U. S. 565, wherein the defendant threatened to cease doing business with one party if he did business with a certain other party, the court held that no elements of monopoly or oppression existed and that it was the right, long-recognized, of a trader engaged in an entirely private business to freely exercise his own independent expression as to the parties with whom he will deal.

And then again in the case of *Moore v. New York Cotton Exchange*, 270 U. S. 593, it appears that by virtue of a contract the Western Union Company paid the defendant a certain sum for the year for the privilege of receiving and distributing quotations in the United States to such persons as the defendant might approve. It was required that applicants must sign an application agreeing not to use quotations for bucket shop purposes or give them to other persons. The plaintiff in that case made application and it was refused. The court, at page 606, held that restrictions to preserve the plaintiff's business and terms were proper to that end and that neither in purpose nor in effect did the defendant directly or unreasonably restrain commerce or operate to create a monopoly, and further stated: ''It has long been settled by this court that under such circumstances a trader or manufacturer engaged in a purely private business may freely exercise his independent discretion in respect of the persons with whom he will deal and to whom he will sell and refuse to sell.'' And the court held that the method of operation was not in conflict with the Anti-Trust Law. It would seem, under the circumstances, that the plaintiff in licensing dealers to handle its product did not create a monopoly and that it was done

for the purpose of protecting the business of the plaintiff by designating proper persons to handle its product.

The plaintiff-appellee made a motion in this court to strike certain parts of the record and disregard certain other portions of the appellants' brief and reply brief, and this motion was reserved to the hearing of the cause. Upon considering the motion the plaintiff objects to certain named medical journals, as well as two optical journals, as not being proper to be considered by this court. Certain reports of the Bureau of Standards of the U. S. Government were referred to in the brief and called to the attention of the court. It might be said in reply to this motion that the court has considered all of the questions and the authorities which it regards as conclusive, so that it will not be necessary to further consider the motion made before this court.

The defendants object to the award by the court to the master in a separate decree of $2,990.30 for his charges as being excessive, unreasonable and contrary to the statutes of Illinois. They suggest that the amount claimed was allowed by the court for the taking of 5,954 folios of testimony at 15 cents per folio. Such charge for 3,342 folios, consisting of testimony taken upon the hearing before him, the defendants admit is approximately correct. They claim, however, that the charge for the taking and reporting of 2,612 folios of documentary evidence is grossly excessive, and the charge is made that arriving at this number of folios the master counted all the pages of various magazines, trade journals not named and the like, in which out of hundreds of pages of text, advertisements, etc. only one page, namely, plaintiff's advertisement is an exhibit. Defendants also complain that they were charged $410.25 paid by the plaintiff to its stenographer. While the question presented regarding the service charge allowed the master, and also the amount allowed the plaintiff for the expenses of his stenog-

rapher, is one for consideration by this court, yet it is not altogether clear wherein the 2,612 folios of documentary evidence is grossly excessive. It is to be noted that the suggestion is made by the defendants that there was a separate decree allowing the master's fees. It appears from the certificate of service presented by the master that he has charged for 45 days' services rendered in passing upon the questions which were presented to him, and for these services so rendered he lumped the amount which he asked the court to allow at $2,000. There is nothing in the record to indicate that any evidence was heard by the court for the purpose of fixing the *per diem* charge. This was a necessary requirement and should have been followed. In the case of *Comstock v. Morgan Park Trust & Sav. Bank,* 367 Ill. 276, the court said:

"By the statute, (53 S. H. A. 38; State Bar Stat. 1935, chap. 53, par. 34;) the master was entitled to fifteen cents per folio for all the evidence introduced at the hearings. (*Donham v. Joyce,* 257 Ill. 112.) In *Herpich v. Williams,* 300 Ill. 540, we held that the chancellor, in fixing master's fees for services not required by law to be itemized, should base the amount on the actual number of days that were reasonably required in their performance. That number of days should not be so excessive as to render nugatory the restrictions as to the *per diem* there prescribed. The amount to be allowed as a *per diem* should be based on evidence heard 'before the chancellor on principles not inconsistent with natural justice.' The master was allowed $775, half of the $1550 requested by him in his third certificate. The item is: 'Fees to be fixed by the court for obtaining files, docketing cause, attending hearings, preparing report, hearing objections, etc., $1550.' No evidence was heard as to the reasonable value of such of these items as the master was entitled to be paid for. In the absence of such proof we cannot tell whether $775 was a proper allowance."

This statement by the Supreme Court applies with equal force to the charge that is made by the master of $2,000 for his services for the number of days he has certified were necessary in considering the matters presented and in preparing the master's report. And this is true as to the objection made that the number of folios of documentary evidence is grossly excessive. From the state of the record before us at the present time there is nothing from which we can determine that the allowance, set forth in the certificate of services claiming $2,893.10 and stating that $410.25 is an allowance due the plaintiff, would be justified.

For the reasons stated it will be necessary to reverse the allowance to the master. The cause is therefore remanded to the circuit court of Cook county with directions to hear whatever testimony may be presented by the master in chancery, after reasonable notice to him, as to the nature, extent and reasonable compensation to be paid him for the work done in preparing his report, folio allowance and stenographic expense. Otherwise, the decree of the court is affirmed.

*Affirmed in part, reversed in part and remanded with directions.*

DENIS E. SULLIVAN, P. J., and BURKE, J., concur.