51 CCPA

**Application of MOGEN DAVID WINE CORPORATION.**

**Patent Appeal No. 7085.**

United States Court of Customs and Patent Appeals.

March 12, 1964.

Rehearing Denied June 2, 1964.

---

mark for wines, on the Principal Register established by the Trademark Act of 1946.

The application,[1] alleging use since November 1956, seeks registration of the following:

Appellant is the owner by assignment of an existing design patent [2] described by the board as "covering the decanter bottle for which it seeks registration."

Specimens filed in the Patent Office with the application comprise photographs of the bottle as actually used. While some differences may be noted among the bottles depicted in the drawings of the design patent, the application drawing, and the photographic specimens, no issue was raised below as to whether all three relate to substantially the same configuration.

The board found the factual situation to be as follows:

"The evidence submitted by applicant in an effort to establish its claim of secondary meaning comprises an affidavit by its president, a series of photographs and advertisements, and a large number of affidavits from retailers and consumers of wine. According to the affidavit of applicant's president, one of applicant's predecessors began to use in 1935 a wine decanter bottle hav-

Sidney Wallenstein, Chicago, Ill. (Ben Cohen, Washington, D. C., Charles B. Spangenberg, Chicago, Ill., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

ALMOND, Judge.

Mogen David Wine Corporation appeals from the decision of the Trademark Trial and Appeal Board, 134 USPQ 576, refusing registration of the configuration of a decanter bottle, as a trade-

1. Serial No. 73,406 filed May 11, 1959.

2. Des.Pat. No. 158,213 issued Apr. 18, 1950 for a term of 14 years.

ing a configuration slightly different from that shown above. Use of that decanter bottle continued with slight variations until approximately October 1956 when the decanter bottle in question began to be employed. Applicant has sold large quantities of wine in decanter bottles corresponding to the configuration of the present decanter or slight variants thereof, it being estimated that sales of wine bottled in decanters of such configurations by applicant and its predecessors throughout the United States from 1935 up to the present date (March 16, 1960) have amounted in retail value to a sum substantially in excess of fifty million dollars. Applicant and its predecessors have advertised and promoted its wines in such decanter bottles through radio and television, newspapers, magazines, billboards, point-of-sale displays and other media, at a cost during the period from 1935 to the present time of more than fourteen million dollars. The documentary material of record reveals that applicant has consistently and prominently featured a decanter bottle of its wine on telvision programs, on billboards, and in advertisements in nationally circulated consumer and trade publications.

"The affidavits by the retailers and dealers are to the effect that they have, for many years, been familiar with the particular bottles in which wines of various producers have been sold and that they associate wines bottled and sold in decanters of the configuration in question with only one company, namely, the firm selling 'MOGEN DAVID WINES.'"

The examiner took the position that the "container per se did not in fact function as a trademark to indicate origin of the goods in the applicant," stating that:

" * * * Since it does not appear from the record * * * that appli-

cant has at any time, * * * by any * * * means, referred to the container per se as an indication of origin in applicant, the identical or substantially-identical form affidavits from consumers and dealers are not convincing that the container presented for registration does in fact function as a trademark to identify and distinguish applicant's wines from like goods of others."

The board in sustaining the examiner's refusal of registration rejected the reasoning applied by the examiner in denominating the issue as solely one of fact, attributing it to the examiner's misconstruction of or apparent confusion relative to the "law pertaining to the registration of the subject matter of an existing design patent on the Principal Register as distinguished from the registration of said matter on the Supplemental Register."

The board, citing In re The Pepsi-Cola Company, 120 USPQ 468 (TT&A Bd., 1959), and noting that the design patent here is due to expire in 1964, reasoned that inasmuch as registration on the Supplemental Register affords the owner no presumptive right to exclusive use, it could not extend the monopoly which the registrant enjoys under the grant of the design patent, while registration on the Principal Register avails to the owner thereof prima facie evidence of ownership of the mark and exclusive right to use it in commerce in connection with the recited goods with the consequent right to exclude others from the use and registration of the same or similar design for like or similar goods, for the duration of the registration, which is renewable every twenty years. The board concluded that issuance of the registration sought by appellant would be inimical to the rights of others conditioned under the patent grant to make fair use of the subject matter after expiration of the patent and would thereby, in effect, extend the monopoly of the patent contrary to the intent and purpose of the patent law.

The board's view was stated as follows:

"It thus seems clear that while applicant's decanter bottle, although the subject matter of a subsisting design patent, may in view of the distinctive character of the decanter and the record adduced by applicant be capable of distinguishing applicant's wines and hence be registrable on the Supplemental Register, it is precluded as a matter of law during the life of the design patent from constituting subject matter which may properly be registered on the Principal Register. See: In re The Deister Concentrator Company, Inc. [289 F.2d 496, 48 CCPA 952], 129 USPQ 314 (CCPA, 1961). The question whether or not the decanter bottle has acquired a secondary meaning and therefore serves as a trademark to identify and distinguish applicant's wines is one which can be considered, if at all, only after the expiration of the design patent."

It is clear that the board refrained from passing judgment on the factual issue as to whether the evidence submitted served to establish that appellant's mark functions as a trademark to identify and distinguish appellant's wines.

■ The ultimate issue posed here, therefore, is whether or not, as a matter of law, appellant is precluded from obtaining registration for its recited goods on the Principal Register for its bottle configuration trademark during the life of its design patent. This precise question is one of first impression in this court.[3]

We believe that a proper resolution of the issue here requires recognition of the distinction in purpose underlying the protection accorded designs under the patent laws and that protection accorded trademarks under the common law of unfair competition, including the law of trademarks which is a part of it, and the statutory trademark law, on the basis of secondary meaning.

This distinction is recognized by a number of leading text writers in the field of patent and trademark law. In support of its contention in this respect appellant cites Nims, in Vol. 1, "Unfair Competition and Trade-Marks (4th Edition, 1947), at page 390, where it is stated:

"The good will of the patentee survives the patent. His popularity as manufacturer or merchant may create a demand for the product as made by him which may be represented by a trade-mark, by non-functional decorative features which have acquired a secondary meaning, or by dress such as a label or wrapper of peculiar design by which the article and its maker have become associated in the public mind. These features have nothing to do with the patent rights. They are property of the patentee which survives the patent. As to them, the general rules with regard to trade-marks and the dress of the goods apply as though no patent were involved. As a manufacturer, one may make any unpatented article, but as a vendor, he may be restricted in the interest of fair competition."

A further citation of similar purport is Callmann in Vol. 1, "Unfair Competition and Trademarks" (2d Edition, 1950), at pages 252–253:

"A design patent is a hybrid which combines in itself features of both a patent and a copyright. From the patent it borrows the peculiarity that it is industrial and that its exclusive right is one to 'make, use and vend' as distinguished from the copyright which reserves the right to copy and represent the work to the public. Similar to the copyright its purpose is not to protect a technical idea but to protect an artistic or ornamental form.

---

3. See "Two For One: Trademarks and Design Patents" by C. K. Wehringer in 50 TMR 1158.

The design must be ornamental and is, of course, non-functional in nature; during and after the life of the patent protection may be granted against unfair competition on the ground of secondary meaning."

In further advancement of its thesis that "patent protection does not, in principle, exclude trademark protection or what is tantamount thereto, namely, protection under the law relating to unfair competition where secondary meaning has been established," appellant cites the following cases: Lucien Lelong, Inc. v. George W. Button Corporation, 50 F. Supp. 708 (D.C.S.D.N.Y., 1943); Oneida, Ltd. v. National Silver Co., 25 N.Y.S.2d 271 (N.Y.Sup.Ct., 1940); Prince Matchabelli Inc. v. Anhalt & Co., Inc., 40 F. Supp. 848 (D.C.S.D.N.Y., 1941), and Falcon Industries, Inc. et al. v. R. S. Herbert Co., Inc. et al., 128 F.Supp. 204 (D.C. E.D.N.Y., 1955).

In Lucien Lelong imitation by defendant of the design of a bottle covered by an unexpired design patent was enjoined under the law of unfair competition.

In Oneida, Ltd. plaintiff secured injunctive relief in a state court, on the ground of unfair competition, against defendant's copying a silverware pattern covered by a design patent.

In Prince Matchabelli the patent involved covered a purse kit. Injunctive relief was granted pendente lite on the ground of unfair competition by reason of defendant's imitation of plaintiff's purse kit. The court stated:

" * * * the purse kit of the patent has 'become so associated with the plaintiff in the mind of the public as to acquire a secondary meaning and cause any bag of the same appearance to be ascribed to the plaintiff as the source of production'."

In the English case of In re United States Playing Card Company's Application, 1 Ch. 197 (1908), the application was for registration of a trademark consisting of a pattern on the backs of playing cards. Registration was refused on the ground that the mark, if protectable

at all, would have to be registered under the Designs section. Reversal was had on appeal. Appellant quotes the court as stating:

"There is nothing in the Trade Marks Act of 1905 to prevent it being registered as a trademark merely because it is capable of being registered as a design.

"In my opinion registration as a design and registration as a trademark are not mutually exclusive, and it is not a fatal objection to an application to register something that is claimed as a trademark that the subject matter of the application is capable of being registered as a design."

While it is to be observed that the issue before us was not treated by these authorities, yet they bear a substantial relationship and relevancy in that they support the thesis advanced by appellant that "the law recognizes that the protection accorded to a design under the patent laws and that accorded to what amounts to a trademark under the common law doctrine of secondary meaning are separate and distinct, and that the rights conferred by law in the one in no way exclude the rights conferred by law in the other."

The underlying purpose and the essence of patent rights are separate and distinct from those appertaining to trademarks. No right accruing from the one is dependent upon or conditioned by any right concomitant to the other. The longevity of the exclusivity of one is limited by law while the other may be extended in perpetuity.

We find persuasive the logic embraced in appellant's argument predicated on the following hypothesis: A is the originator of a distinctive and novel bottle configuration. By use and extensive exploitation for a period of six months as a container for wines, association between the configuration and wines is sufficient to establish secondary meaning in the configuration in relation to wines. Upon application properly supported registration on the Principal Register is is-

sued at the end of ten months after the bottles containing wines are first sold by A. A week later, A files application for a design patent for the configuration in full compliance with the design patent law and so meeting the criteria of patentability. What law or what rule in rhyme or reason would preclude the patent grant or inhibit the concurrent enjoyment of the rights appertaining to both the design patent and the trademark? Assuming, that upon expiration of the design patent by statutory limitation, A continues, without abatement, in the business of selling wines in bottles of the configuration of the expired design patent which configuration still serves as an indication of origin of said wines to the purchasing public, what possible legal impact could such circumstance have upon A's rights based upon his Principal Register Trademark registration for the bottle configuration as applied to wines? We are unable to divine any reason in law or logic in support of a distinction between the ensuing legal consequences predicated upon whether a valid subsisting Principal Register trademark registration issued prior or subsequent to the grant of a valid and subsisting design patent for the configuration disclosed by the record here.

The rationale of the board's decision found lodgment in the distinction which it drew between the rights conferred by a Principal Register registration and the status of a registration on the Supplemental Register.[4] The board reasoned that inasmuch as registration on the Supplemental Register does not afford the owner any of the presumptive rights conferred by Section 7(b) of the statute on the owner of a registration on the Principal Register, "it does not and could not extend the monopoly which the registrant enjoys under the grant of the design patent."

■ We recognize the distinction between registrations on the Principal and Supplemental Registers and their legal effects. However, we can find no supportable reasons in the purposes or philosophies of patent and trademark law to support the conclusion the board bases on that distinction. In our opinion, trademark rights, or rights under the law of unfair competition, which happen to continue beyond the expiration of a design patent, do not "extend" the patent monopoly. They exist independently of it, under different law and for different reasons. The termination of either has no legal effect on the continuance of the other. When the patent monopoly ends, it ends. The trademark rights do not extend it. We know of no provision of patent law, statutory or otherwise, that guarantees to anyone an absolute right to copy the subject matter of any expired patent. Patent expiration is nothing more than the cessation of the patentee's right to exclude held under the patent law. Conversely, trademarks conceivably could end through non use during the life of a patent. We doubt it would be argued that the patent rights should also expire so as not to "extend" them.

■ An ancillary issue here is whether use by appellant of the trademark in issue during the life of the design patent constitutes trademark use.

Relying on Ex parte Caron Corporation, 100 USPQ 356 (1954), the board held that the "use of the subject matter of a design patent during the life of the patent cannot properly be considered as trademark use."

Section 1(a) (1) (15 U.S.C. § 1051) of the Trademark Act of 1946, as amended, establishes requirements for registering trademarks on the Principal Register.

Section 2 (15 U.S.C. § 1052) notes exceptions not here material and provides that "nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce."

---

4. This distinction is also drawn in a recent student paper by D. W. Martens, entitled "Trademark Registration of Patented Articles—Extension of Monopoly?" in Vol. 7 No. 4 of the Patent, Trademark, and Copyright Journal of Research and Education, Geo.Wash.U.

It was within the province of Congress to write an exception in the provisions of the statute to preclude use of the subject matter of a design patent during the life of the patent as trademark use. It did not see fit to do so. The language of Section 2, supra, of the act is clear and forthright in its embrace of the situation here, assuming that the mark is one "by which the goods of the applicant may be distinguished from the goods of others" and "the mark used by the applicant has become distinctive of the applicant's goods in commerce." To hold, as did the board, that an existing design patent precludes even distinctive marks from registration would be tantamount to writing an exception into the statute excluding consideration of use during the life of a design patent. This we cannot do.

Furthermore, the decision of the board would in effect nullify or suspend the provisions of Section 1, supra, relating to date of first use and first use in commerce, which makes no exception as to use during the life of a design patent.

The board, as did the solicitor, cited In re The Deister Concentrator Company, Inc., 289 F.2d 496, 48 CCPA 952. The facts and the issue presented in In re Deister readily distinguish that case from the facts and issues here under consideration. The applicant in Deister sought Principal Register registration for a specific rhomboidal outline shape for ore concentrating and coal cleaning tables on which it had obtained apparatus patents showing the deck having the shape described in the trademark application. This court sustained the board's denial of registration "because the shape is *in essence* utilitarian" (289 F.2d 501, 48 CCPA 968). The court said:

"  *  *  *  And since under the principle laid down in Article I, section 8, of the Constitution copyright or patent protection is necessarily limited in time, we are not seriously concerned with whether he who claims trademark rights of *unlimited* duration now has or did have patent pro-

tection, or what that protection is or was. We, therefore, see no reason to consider appellant's patents except to the extent they may contain evidence of the functionality of the outline shape sought to be registered as a trademark."

We have considered the ingenious argument of the solicitor and the authorities cited in support of his "functionality in ornamentation" approach. The solicitor argued that under this approach "any de facto secondary meaning attaching to appellant's alleged mark covered by its unexpired design patent should have no more legal significance than de facto secondary meaning which might have attached to the utilitarian alleged marks" in the Deister case and other cases cited by him. On the basis of the record before us and the issue presented, we cannot accept the rationale of this approach. We find no support for it in the cases cited.

We have not overlooked the case of In re McIlhenny Co., 278 F.2d 953, 47 CCPA 985. Here, as distinguished from the McIlhenny case, the decanter bottle design may be inherently distinctive. In the McIlhenny case the majority stated (278 F.2d at 956, 47 CCPA at 988–989):

"The fallacy in appellant's position resides in its misconception of the Lanham Act definition of a trademark. Section 45 requires not only the adoption and use of the mark but that it does in fact identify the goods and 'distinguish them from those manufactured or sold by others.' This requirement is the basic element of a trademark. *The mere intent of an applicant will not convert an inherently non-distinctive bottle into a trademark.* Without an applicant's fulfilling the requirements of section 2(f), registration on the Principal Register is only proper when the subject matter is a distinguishing and identifying trademark *per se* and obviously does identify the goods and distinguish them from the goods of others. Of course, under section 2(f), *if the ap-*

*plicant offers clear and convincing evidence that an otherwise non-distinctive trademark, such as this bottle, has in fact become distinctive* of applicant's goods in commerce and does identify them, *registration on the Principal Register is warranted.*

"In this case, *appellant is endeavoring to achieve registration on the Principal Register without such proof.* Here we have a little bottle with no features particularly connecting it with the pepper sauce except the pepper sauce itself which contributes only to giving the bottle and sauce together the characteristic of being descriptive. The bottle and its closure have no distinctive features upon which this court could predicate a conclusion that the device has trademark significance *per se.*" [Emphasis added.]

Here, the design of the decanter bottle, when associated in the purchasing public's mind with appellant's wines, may have acquired the attributes of a registrable trademark. This essential factor was lacking in the McIlhenny case.

For the foregoing reasons, we are of the opinion that the decision of the board refusing registration of appellant's bottle configuration as a trademark for wines is in error.

We are further of the opinion that the board committed error in its holding that "use of the subject matter of a design patent during the life of the patent cannot properly be considered as trademark use."

■ The decision of the Trademark Trial and Appeal Board is *reversed* and the case *remanded* to the board for decision on the factual issue as to whether the evidence submitted is sufficient to establish that appellant's bottle design functions as a trademark to indicate origin.

Reversed and remanded.

WORLEY, Chief Judge, concurs in the result.

RICH, Judge, concurring.

Because this is a case of first impression with us and as the author of the opinion for the court in the Deister case [1] who had to struggle with the problem of when the law does and does not permit the acquisition of trademark rights in aspects of product appearance *which have acquired de facto secondary meaning,* I wish to say a word about the distinction which I see between this case and the facts of the Deister case and why I reject the solicitor's argument based on "functionality in ornamentation."

The Deister opinion points out that the policy question is whether a potentially perpetual monopoly in the thing sought to be registered should be granted. On the facts in that case we held that the *law* did not permit it. In this field the law is deduced entirely from court decisions. The stated reason, under that law, was that the outline shape of the deck of the shaking table was that it was *in essence* utilitarian—a shape utilized for reasons of engineering efficiency. The law, however, does not make these decisions easy and actually it is made as we go along on a case to case basis.

The Deister opinion also took note of a distinction between "functional" shapes *incapable* of being monopolized under the law and those "functional" shapes which *might* be monopolized "because they are *of such an arbitrary nature that the law does not recognize a right in the public to copy them, even if some incidental function is associated with them.*" (Emphasis added.)

My view of the bottle shape in the instant case is that it falls into the latter category. The solicitor argues that it has a "decanter" shape and is therefore possessed of a desirable appearance making it suitable for table use when one wants a bottle with a pleasing appearance. But decanters can be of a great variety of shapes. He cites the Restatement of Torts to show that when goods are bought for their aesthetic appearance, their shape contributes to that as-

1. In re Deister Concentrator Co., Inc., 289 F.2d 496, 48 CCPA 952.

pect of their value and is "functional." He then quotes the Restatement:

"The determination of whether or not such features are functional depends upon the question of fact whether prohibition of imitation by others will deprive the others of something which will substantially hinder them in competition."

The solicitor asserts that if others were prohibited from using the appearance of appellant's bottle, they would be substantially hindered in competition on the product, namely the specific bottle containing wine.

Whether competition would in fact be hindered is really the crux of the matter. I disagree with the solicitor because I am convinced that others would not be in the least hindered *in competition*. Others can meet any real or imagined demand for wine in decanter-type bottles—assuming there is any such thing—without being in the least hampered in competition by inability to copy the Mogen David bottle design. They might even excel in competition by producing a more attractive design under the stimulus of a prohibition against copying under the principles of unfair competition law.

The solicitor further quotes the Restatement of Torts:

"A feature is non-functional if, when omitted, nothing of substantial value in the goods is lost."

He argues that the very existence of the design patent is sufficient evidence of ornamental function, which, I suppose, would be something of value lost when omitted.

This brings us to what is, in my opinion, an essential distinction between engineering function and ornamentation function which should be recognized in passing on these cases which involve the policy question whether the public shall have freedom to copy or not. In Deister, for example, use of the diagonal shape was essential to the enjoyment of the engineering advantages which brought it into being. (At least that was our assumption on the record.) In the instant case, even if we assume some value behind the specific design in an aesthetic sense, it is not in the least essential to use it in order to have a fully functioning bottle or an attractive bottle or even a bottle of the general type of the Mogen David bottle, whether or not considered to be a "decanter." (Our impression of decanters is that they vary as much in shape and design as wine and liquor bottles in general.)

The Restatement appears to use the terms "functional" and "non-functional" as labels to denote the legal consequence: if the former, the public may copy; and if the latter, it may not. This is the way the "law" has been but it is not of much help in deciding cases. But going behind the labels to the bases for determining which to apply, we see, I believe, that depriving the public of the right to copy Mogen David's bottle in selling wines and related products (1) does *not* hinder competition and (2) does not take from the goods (bottled wine) something of *substantial* value. And that is because, within the rationale of the Deister case, the design of a wine bottle like the one here is of such an *arbitrary* nature that depriving the public of the right to copy it is insignificant, as a policy matter, in comparison with the vendor's right to protection from possible confusion in trade.