DUO-TINT BULB & BATTERY CO., INC., Plaintiff-Appellant and Counter-
defendant-Appellee, *v.* MOLINE SUPPLY COMPANY *et al.*,
Defendants-Appellees and Counterplaintiffs-Appellants.

Third District   No. 76-100

Opinion filed February 25, 1977.

Michael M. Ushijima, of Rosemont, and Olson, Trexler, Wolters, Bushnell & Fosse, Ltd., of Chicago (Todd Parkhurst, of counsel), for plaintiff.

Robert J. Noe and James D. Mowen, both of Bozeman, Neighbour, Patton & Noe, of Moline, for defendants.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, Duo-Tint Bulb & Battery Co., Inc., brought an action in the circuit court of Rock Island County against the defendants, Moline Supply Co., and other individual defendants, jointly and severally, for damages, attorney's fees and an injunction. The action was based on an alleged violation of the Illinois Uniform Deceptive Trade Practices Act and the related common law (Ill. Rev. Stat. 1975, ch. 121½, pars. 311-317). Moline Supply Company filed a counterclaim against plaintiff under the same Act alleging that Duo-Tint had engaged in unfair and deceptive trade practices by wilfully disparaging Moline Supply and making false

representations to Moline Supply's customers. Following a bench trial, the trial court found in favor of the defendants on plaintiff's complaint and in favor of plaintiff on defendants' counterclaim. No findings of fact or an opinion were rendered by the trial court. Appeals were taken by the respective parties from the trial court's decisions denying liability under the complaint and the counterclaim.

Plaintiff is engaged in the business of providing retail merchants with flashlights and replacement flashlight bulbs. The individual flashlight bulbs are purchased in quantity by Duo-Tint from various manufacturers and then repackaged in a bulb dispenser box. The purpose of the bulb box is to provide the retail merchant with a complete assortment of flashlight bulbs, with the more popular bulbs being supplied in greater amounts while a representative sample of the less frequently used bulbs is also included. A reorder card is provided in each box and in the event the supply of a particular type of bulb becomes exhausted the merchant need only fill out the card and drop it in the mail. Upon receipt of the card, Duo-Tint ships a new full bulb dispenser box to the merchant who places the old unit in the mailing carton and mails the old box back to Duo-Tint. The bulbs remaining in the old bulb box are inventoried by Duo-Tint and an offsetting credit given to the customers for the bulbs remaining. A salesman also makes regular calls on the merchant, replenishing the depleted inventory by a procedure similar to that above. The merchant can also arrange to have Duo-Tint ship a new bulb box at regular intervals without the use of the reorder card, the old bulb box being returned to Duo-Tint with the appropriate credit. Upon receipt of a bulb dispenser box from Duo-Tint, the box is the sole property of the customer, with Duo-Tint retaining no interest in them. Included with each box was a bulb information chart, listing the contents of the box by manufacturer and the manufacturer's assigned bulb number.

To assist in selling these flashlight bulbs, Duo-Tint retained various sales representatives who were assigned exclusive territories and contacted prospective new accounts and serviced existing accounts. Prior to 1972, defendants Kirk, Lange and Kruzel were associated with Duo-Tint as sales representatives. None of these sales representatives were paid on a straight commission basis, no deductions for taxes or social security were made and they paid their own expenses. The status of defendants Kirk, Lange and Kruzel perhaps would be best described as that of independent contractors. It appears that the status of these men was an issue at trial, but it is no longer disputed that they were not employees of Duo-Tint.

In 1971 a dispute arose between the director of marketing for Duo-Tint, Gerald Thomas, and each of the defendant sales representatives over the sales of outside product lines by these representatives to Duo-Tint

customers. Late in 1971 Thomas attempted to induce Kirk, Lange and Kruzel to sign a covenant not to compete, but the men refused to sign. When these defendants refused to stop carrying outside product lines or sign the covenant not to compete, they were terminated as sales representatives for Duo-Tint. No contention is made on this appeal that these men were not free to compete with plaintiff or were prevented by their prior association with plaintiff from contacting and soliciting plaintiff's customers.

Defendant, Faye Winter, d/b/a Moline Supply Company, was contacted by Lange over the prospect of forming a business to distribute miniature light bulbs. A division of Moline Supply Co., Serv-A-Lite, was subsequently formed to carry on this business and eventually, defendants, Lange, Kirk and Kruzel, became sales representatives for Moline Supply Co. and Serv-A-Lite. This new competing firm adopted a marketing system that was a duplicate of the system previously established by Duo-Tint. Plaintiff contends that the reorder card and bulb information chart used by Moline Supply are photostatic copies of plaintiff's, a contention that is not challenged by the defendants. As concerns this appeal, perhaps the single most important physical item was the bulb dispenser box. Each of the parties bulb box is nearly identical in size and shape, with the primary distinguishing characteristic being the difference in the color of the boxes. Moline Supply's box is red with yellow lettering whereas the Duo-Tint box is blue with gold lettering. The boxes are shaped into a simple rectangular solid with the bulbs being contained in a number of drawers which are accessible from the front. While other distinguishing characteristics do exist, it is unnecessary to discuss them. For our purposes, we will treat the respective sizes and shapes of the boxes as being identical. It is undisputed that plaintiff did not attempt to patent the bulb dispenser box, nor did it obtain a copyright on either the bulb information chart or reorder card.

After affiliating with defendant Moline Supply Company, the individual defendants who had previously been associated with plaintiff began soliciting customers of plaintiff. In an effort to prevent any confusion on the part of the customers, various means were employed by all the defendants to inform each prospective customer who had been with Duo-Tint of the new affiliation between the former Duo-Tint sales representatives and Moline Supply Company. A large number of merchants were persuaded to switch purchasing their supplies of miniature light bulbs from Duo-Tint to Moline Supply.

Moline Supply's counterclaim rests on a series of incidents which occurred when the plaintiff's salesmen contacted Moline Supply customers who had been with Duo-Tint in an effort to have them revert to purchasing Duo-Tint products. The first incident occurred after a chain of

retail outlets called Our Own Hardware had commenced doing business with Moline Supply. Gerald Thomas, an employee of Duo-Tint, contacted the buyer for the Our Own chain of stores and called the defendant Lange a son-of-a-bitch and said that Moline Supply was a crooked outfit which was stealing Duo-Tint's lines. The next incident occurred sometime in 1974 when a Duo-Tint representative contacted the owner of Shorter Hardware, Inc., in Lombard, Illinois. At this time, Moline Supply, through its sales representative defendant, Al Kruzel, was supplying Shorter Hardware with flashlight bulbs. When the Duo-Tint representative appeared, the owner of the store asked what had happened to Al Kruzel. The man replied that Kruzel had had a heart attack and died and that he (the representative) was replacing him. Kruzel had neither died nor had a heart attack. Thereafter, the Duo-Tint representative removed the red Moline Supply bulb dispenser and replaced it with a blue Duo-Tint dispenser. A similar occurrence happened during the same year when a bulb salesman from Duo-Tint appeared and advised the owner of the Westmore Hardware Store that Kruzel had retired, a fact that was false. Thereafter the salesman proceeded to remove the Moline Supply dispenser and leave a blue Duo-Tint dispenser in its place.

Plaintiff asserts that the foregoing facts clearly established liability under the broad spectrum of law that is called unfair competition. The statutory basis for plaintiff's complaint is founded on the provisions of the Illinois Uniform Deceptive Trade Practices Act, which provides in part:

"A person engages in deceptive trade practices when, in the course of his business, vocation or occupation, he:

\* \* \*

(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship approval or certification of goods or services:

(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another;

\* \* \*

(12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." (Ill. Rev. Stat. 1975, ch. 121½, par. 312.)

Whether or not plaintiff has established a cause of action for unfair competition under the foregoing statutes and the related common law depends on whether plaintiff possesses a legally protectable interest in the bulb information chart, reorder card, bulb dispenser box, or the use of these three items together in a marketing system.

Defendant first asserts that by virtue of Federal law, he is entitled to

copy each of the three physical items used in plaintiff's sales system and that his only requirement is to correctly and adequately identify the source. He argues that under the decisions in the companion cases of *Sears Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 11 L. Ed. 2d 661, 84 S. Ct. 784, and *Compco Corp. v. Day-Brite Lighting Inc.*, 376 U.S. 234, 11 L. Ed. 669, 84 S. Ct. 779, he is entitled to copy plaintiff's bulb dispenser box. He also contends the bulb information charts and reorder cards are in the public domain and under Federal copyright law, they are available for anyone to copy or use. We agree with these contentions only in part.

■■ As concerns the bulb information chart and reorder card, we hold the defendants were free to copy them and the only restriction imposed by the Illinois law of unfair competition was that defendants sufficiently identify the source of the chart or card to a customer by providing proper labeling on the item with either the Moline Supply or Serv-A-Lite name and address. The only protection available to plaintiff for the arrangement of information or words contained in the bulb information chart or reorder card was available under the Federal copyright laws. We must, however, disagree with defendant that the *Sears* and *Compco* cases allow defendant to copy plaintiff's bulb dispenser box. The following language supports defendant's contention:

> "As we have said in *Sears,* while the federal patent laws prevent a State from prohibiting the copying and selling of unpatented articles, they do not stand in the way of state law, statutory or decisional, which requires those who make and sell copies to take precautions to identify their products as their own. A State of course has power to impose liability upon those who, knowing that the public is relying upon an original manufacturer's reputation for quality and intregity, deceive the public by palming off their copies as the original. That an article copied from an unpatented article could be made in some other way, that the design is 'nonfunctional' and not essential to the use of either article, that the configuration of the article copied may have a 'secondary meaning' which identifies the maker to the trade, or that there may be 'confusion' among purchasers as to which article is which or as to who is the maker, may be relevant evidence in applying a State's law requiring such precautions as labeling; however, and regardless of the copier's motives, neither these facts nor any others can furnish a basis for imposing liability for or prohibiting the actual acts of copying and selling." *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 238, 11 L. Ed. 2d 669, 672-73, 84 S. Ct. 779.

Upon careful consideration of both decisions, the above-quoted language, and subsequent decisions interpreting *Sears* and *Compco,* we

find neither case controlling. The language from the *Compco* case that supports defendants' position has been found to be dictum and with this we agree. (*Truck Equipment Service Co. v. Fruehauf Corp.* (8th Cir. 1976), 536 F.2d 1210, 1214.) Without a more careful analysis, such a sweeping rejection of long-established legal theories of unfair competition by mere dictum cannot be considered as controlling here.

■■ While we do not regard *Sears* and *Compco* as controlling, the rationale of those decisions has always been applied by the State courts with respect to the functional features of any product. (See Note, *Unfair Competition and the Doctrine of Functionality*, 64 Colum. L. Rev. 544 (1964).) Under the law of unfair competition, an individual has a protectable interest only in the nonfunctional aspects of his goods. Once goods have been placed in the public domain, the functional attributes of the goods are free to be copied by all. Hence, a plaintiff must establish not only that his goods have been copied, but also that the features copied are nonfunctional.

■■■ The doctrine of functionality is designed in part to mesh State unfair competition law with Federal patent law. Although Federal patent law and State unfair competition law are directed as different purposes and objectives (see *Application of Mogan David Wine Corp.* (C.C.P.A. 1964), 328 F.2d 925, 929; accord, *Truck Equipment Service Co. v. Fruehauf Corp.* (8th Cir. 1976), 536 F.2d 1210), there exists a realm of potential conflict between each branch of law. The theories of functionality remove this potential for conflict. If any portion of the goods or their packages are functional, then, in determining whether protection should be extended, the functional features are properly judged only by Federal patent law standards, such as novelty and nonobviousness, and not by a State's law of unfair competition. If protection is given to such functional aspects under a State's unfair competition law, the State, in effect, would be granting a perpetual monopoly, whereas the protection available under the Federal patent laws is only a limited monopoly. But, where the feature, or more aptly design, is a mere arbitrary embellishment, imitation may be forbidden where the requisite showing of secondary meaning is made. (*Bliss v. Gotham Industries, Inc.* (9th Cir. 1963), 316 F. 2d 848, 855; accord, *Truck Equipment Service Co. v. Fruehauf Corp.* (8th Cir. 1976), 536 F.2d 1210.) It is therefore encumbent upon the plaintiff to establish the nonfunctional aspect of the features of the bulb dispenser box that were copied by the defendant. At this juncture it would be useful to relate the standards by which the functional attributes of the bulb dispenser box must be judged in determining what features, if any, may be considered nonfunctional.

Functionality has been expressed in a variety of ways, but the expressions found in *West Point Manufacturing Co. v. Detroit Stamping*

*Co.* (6th Cir. 1955), 222 F.2d 581, and *Filter Dynamics International, Inc. v. Astron Battery, Inc.*, 19 Ill. App. 3d 299, 311 N.E.2d 386, are perhaps the most accurate in delineating the differences between functional and nonfunctional. Describing what the characteristics of a functional feature are, the appellate court for the sixth circuit stated in *West Point* that a "feature of goods is functional * * * if it affects their purpose, action, or performance, or the facility or economy of processing, handling or using them; * * *." (222 F.2d 581, 591.) Relying in part upon the Restatement of Torts §742, and Comment a (1938), the court in *Filter Dynamics* adopted a similar description of functionality:

"Functional features include those which contribute to efficiency or economy in manufacture and handling through the marketing process, and those which contribute to the product's (or container's) utility, durability or effectiveness or to the ease with which it serves its function or is handled by users." (19 Ill. App. 3d 299, 311-312, 311 N.E.2d 386, 396.)

If the plaintiff's bulb dispenser box falls within the boundaries of the foregoing definitions of functionality, then the defendant was free to imitate and copy it.

■■ The bulb dispenser box was the key feature of a marketing system designed to provide a retail merchant with inventory control, storage, and display of a small, easily lost item, while reducing to a minimum the amount of time required of the merchant. With such a purpose, the respective physical dimensions of the box and the drawers in the box, the arrangement and number of drawers, were all factors which affected the efficiency or economy in handling throughout the marketing process and which contributed to the utility, durability, effectiveness, or ease with which the bulb dispenser box served its function or was handled by its users. Since the form of plaintiff's bulb dispenser box is rectangular, the discussion in 87 C.J.S. *Trade-Marks, Trade-Names, and Unfair Competition* §115, at 393-94 (1954), is relevant to the question before us:

"Mere form of package alone would hardly ever constitute unfair competition. No merchant can acquire an exclusive right to display his merchandise in prewrapped packages; and a court should not vest the exclusive right to use a square or round form of box or a cylindrical form of container in any merchant."

We believe the bulb dispenser box was primarily functional and defendant was therefore free to copy the physical aspects of it.

Suggestions are made by plaintiff that we are concerned only with trade dress, and he relies heavily on *Clairol, Inc. v. Andrea Dumon, Inc.*, 14 Ill. App. 3d 641, 303 N.E.2d 177, in urging defendants' liability. We disagree.

After the plaintiff in *Clairol* had commenced the successful mass distribution and sale of a peroxide product, defendant began marketing a

similar product of his own, using a bottle similar to plaintiff's in shape and size. While we might question whether copying a cylindrical bottle of standard volume (16 oz.) by itself would establish a violation of the Deceptive Trade Practices Act, the defendant in *Clairol* also imitated the labeling on plaintiff's bottle. A visual comparison of the parties' 16 ounce bottles revealed to the *Clairol* court a positive striking likeness, not only in the respective locations and colors of the crown and bridge designs and the horizontal bars on the bottle, but also in the color schemes and sequences utilitized by each. It was upon this marked similarity in labeling that the court found liability.

■■ We agree with the reasoning and findings stated in *Clairol*, but contrary to plaintiff's assertions, it is not applicable to this case. While trade dress may include packaging as well as labeling or other identifying characteristics or decorations concerned with the product (see *Mr. Gasket Co. v. Travis* (1973), 35 Ohio App. 2d 65, 299 N.E.2d 906), the doctrine of functionality applies equally to the package as to its contents. (See *Price Food Co. v. Good Foods, Inc.* (6th Cir. 1968), 400 F.2d 662.) Hence, it is unnecessary to draw any artificial distinctions as to whether the product for sale in this case is the flashlight bulbs and the bulb dispenser box together or whether the product for sale is just the flashlight bulbs and the dispenser box is the package, since the same standard applies in either instance. The prohibition against copying a competitor's trade dress afforded protection only to the color scheme used on plaintiff's bulb box. Since defendants did not copy the color scheme used by plaintiff, contrary to what occurred in *Clairol*, plaintiff's assertion that *Clairol* is controlling is without merit.

It is important to note that we are not dealing with a situation commonly known as passing-off. It is unnecessary to enumerate the various methods employed by defendants in insuring that buyers were not purchasing their products under the impression that the goods were those of plaintiff. If functional aspects dictate the physical characteristics of two competing articles such that they become identical in appearance and if no other distinguishing features can be added to them, then affixing the name or trademark of the manufacturer will, as a rule, suffice. (Callmann, Unfair Competition §77.4(e)(1), at 390-91 (3d ed. 1969), and cases cited therein.) While we might question whether the foregoing sole requirement of proper labeling, without more, would have been sufficient in the present case, we believe the efforts employed by defendants, in addition to proper labeling and distinctive color differences, were both reasonable and adequate to refute any suggestion of passing off or any allegation of unfair competition.

What we have said thus far does not directly answer plaintiff's contention that he is entitled to relief under the Uniform Deceptive Trade

Practices Act because defendants' have used and copied plaintiff's system of marketing flashlight bulbs. We believe this contention is without merit. From its creation, the characteristics a marketing system is to have are inspired by goals of efficiency and economy in selling merchandise and the system is therefore aptly described as being functional. Even if this system of marketing flashlight bulbs were the sole creation of plaintiff's ingenuity and labor, it would not be susceptible to protection under unfair competition laws.

■■ ■ The one question remaining concerns Moline Supply's counterclaim. Following a bench trial, the trial court rejected Moline Supply's claims of wilful disparagement and false representations alleged to have been made by plaintiff or its employees, and found in favor of plaintiff. To be successful in its counterclaim, Moline Supply was required to establish each element of its case by a preponderance of the evidence. (*Soft-Lite Lens Co. v. Ritholz,* 301 Ill. App. 100, 105-06, 21 N.E.2d 835, 838-39.) The facts in the case were disputed and there is ample evidence to support the trial court's determination adverse to the Moline Supply counterclaim.

We think it is important to note that many Duo-Tint customers became Moline Supply customers because of familiarity with and confidence in the salesmen who were servicing their stores. Once these salesmen became affiliated with the new organization offering a similar product, merchants quite understandably preferred to deal with a salesman whom they knew and trusted. However, the law of unfair competition does not afford relief for the misfortune and loss of business by such a preference.

Other issues are presented to us for review but our decision makes it unnecessary to discuss them. For the foregoing reasons, the judgments of the circuit court of Rock Island County are affirmed.

Judgments affirmed.

ALLOY, P. J., and BARRY, J., concur.